Opinion of the Court.
THE defendants in error, who were complainants in the court below, exhibited their bill, claiming to be the heirs of John Robertson, who was the heir at law of James Robertson, and alleging that James Robertson departed this life intestate, leaving considerable personal estate, and one slave, named Cæsar; that Philip Barbour, in the year 1782, administered on his estate, and received into his hands about three hundred pounds, for the services of the said James Robertson as a lieutenant in the revolutionary war, as well as for the service of negro Cæsar ; that he sold Cæsar and never accounted for his value, and never distributed or accounted for any of the estate to the distributees of the decedent, during his life ; that, upon his death, James Barbour became either his administrator *94 or executor, and then, upon his death, Thomas and Richard Barbour became his administrators. They then make the said Thomas and Richard Barbour, and Abraham Chapline, the security in the administration bond of Philip Barbour, defendants, and pray an account of the estate and a decree for the amount ; and they exhibit the order of the Jefferson county court, granting the letters of administration to Philip Barbour, on the estate of James Robertson, the inventory and administration bond.
Statement of the case.
Chapline answered the bill, and professes ignorance of the acts of the administrator, of the amount of the estate, or the right of the complainants thereto, and requires proof of the allegations of the bill. He pleads and relies on a will made by James Robertson, bequeathing all his estate to Philip Barbour, and exhibits a copy. Thomas and Richard Barbour made no answer. The court, not being satisfied with the proof of the supposed will, decreed in favor of the complainants, against all the defendants, the amount of the personal estate and the price of the negro, Cæsar.
The complainants attempt to sustain their claim by proving themselves to be the children of John Robertson, who died in the year 1798, and that said John was the eldest brother of James Robertson, who died unmarried and childless, leaving several other brothers.
Assuming it to be correct, as the complainants suppose, that John Robertson, the elder brother of James, was entitled to all his personal estate on his death, before the year 1782, to the exclusion of his brothers and sisters, (which position, by the laws of Virginia then in force, cannot be supported,) we will first enquire into the liability of Abraham Chapline, under his bond as surety for the administrator, Philip Barbour. The condition of this bond reads as follows :
“ The condition of the above obligation is such, that if the above bound Philip Barbour, administrator of the estate of James Robertson, deceased, do make or cause to be made a true and perfect inventory of all and singular the goods, chattels and credits of the said, deceased, which have or shall come to the hands, possession or knowledge of him the said Philip Barbour, or into the hands or possession of any other person or persons for him, and the same, so made, do exhibit or cause to be *95 exhibited into the county court of Jefferson, at such time as he shall he thereto required by the said court ; and the same goods, chattels and credits of the said deceased at the time of his death, which at any time after shall come into the hands or possession of the said Philip Barbour, or into the hands or possession of any person or persons whatsoever, for him, do well and truly administer according to law ; and further, do make a just and true inventory and account of his actings and doings therein, when thereto required by the said court ; and also, do well and truly pay the said deceased’s debts, so far as his goods, chattels and credits will extend, then the above obligation to be void, else to remain in full force and virtue.”
A security for an administrator is not liable further than condition of his bond makes him liable.
The words, well and truly administer according to law,' create no liability at all in favor of distributees.
The law then in force, which prescribed the condition of an administrator’s bond, was enacted in 1748, and will be found in the Virginia Body of Laws, 163. It will easily be seen, by comparing the condition of this bond with that prescribed, the former is a bad imitation of the latter, and leaves out some important stipulations, and among the rest, that which secures the interest of the distributees, in these words: “ And all the rest and residue of the said goods and chattels, which shall be found remaining upon the said administrator’s account, the same being first examined and allowed by the justices of said court for the time being, shall deliver and pay unto such person or persons respectively, as the said justices, by their order or judgment, shall direct, pursuant to the laws in that case made and provided.”
1. It will be seen, by an inspection of the bond now in contest, as it wants this latter provision, it does not bind the security for the distributable surplus, unless the expressions, “ do well and truly administer according to law,” create such liability. We cannot give these expressions such a latitudinous construction. The word, “administer,” in this instrument, includes the disposition of the estate in behalf of creditors only, and such is the sense in which the legislature has used it. After this is done, the condition prescribed by law speaks of the “ rest and residue found remaining,” and also adds a stipulation disposing of that, and obliges the administrator to pay it to those entitled. After he is bound to administer, the words, and further, are inserted ; showing that when he had complet *96 ed what the legislature intended he should do, by administering, he had the further duty of accounting with the distributees. Such is the construction which this court has given to a similar bond, under a similar law, in the case of Moore and others vs. Waller, 1 Marsh. 488. In that case, it is decided, that the clause binding the administrator well and truly to administer, had no relation to the interest of the distributees, but only that of the creditors. As the important clause, which secures the interest of the distributees, is left out of this bond, and no obligation to them is included in the instrument, it follows, conclusively, that the decree against Abraham Chapline, the security, for the share of the distributees, is wholly erroneous, and cannot be sustained.
Administrators in the third degree, cannot be called to an account in chancery for the estate of the first intestate, without showing that in fact, it came into their hands.
2. It then remains to enquire, whether this decree can be supported against Thomas and Richard Barbour. Many minor objections to it present themselves. It has charged them with interest on the personalty, without any refusal to account, or use of the money being proved ; and, what is more, it makes them liable for the amount in their individual estate, when they are not only administrators of an administrator, but their intestate was only an administrator of an administrator, without fixing upon them, either by allegation or proof, any devastavit, either by them or their intestate. But what forms an insuperable objection to any decree at all against them, is, they are sued as administrators in the third degree, when they, as administrators of James Barbour, had no power over the estate of Philip Barbour, much less over that of Robertson. If Philip Barbour had blended the estate of Robertson with his own, and James Barbour had, in like manner, committed a devastavit on Philip Barbour’s estate, so as to blend it with his own, and as such had passed both that and the estate of Robertson to his administrators, there might have been some apology for attempting to pursue Robertson’s estate in their hands ; but there is not the least allegation or charge in the bill, of that nature, against James Barbour, as the administrator of Philip. He himself could only have been made to account for Robertson’s estate, out of the estate of Philip Barbour in his hands to be administered, as other debts.
*97 It is, therefore, clear, that the bill has shown no cause of complaint against his administrators ; and the decree founded thereon is erroneous, and is, therefore, reversed with costs, and directions to the court below to dismiss the bill with costs.