Little *v.* The State.

No. 10,807.

LITTLE *v.* THE STATE.

CONTEMPTS.—*Legislative Power to Define.*—The power to protect itself from contempts and also to determine what is a contempt, is inherent in every court of superior jurisdiction, and it is not in the power of the Legislature to prevent the one or abridge the other.

SAME.—*Proposal to Bribe Juror or Officer of Court.*—An attempt, for the purpose of gain, to create the belief that a juror or an officer of court having active duties to perform upon a trial, can be bribed, is a contempt of court.

From the Criminal Court. of Marion County.

*J. B. Elam,* for appellant.

*F. T. Hord,* Attorney General, *W. T. Brown,* Prosecuting Attorney, and *C. F. Robbins,* for the State.

ELLIOTT, J.—Rudolph E. Jeter was in attendance at the trial of his son upon a charge of murder, and while visiting his son at the jail during a recess of the court, Little approached him, enquired if he was the father of the young man on trial, and, receiving an affirmative answer, said: "I am a friend of yours and would like to do you all the good I can, and think I can be of some assistance to you. I am well acquainted with the prosecuting attorney; I used to work with him at the rolling mill, and I think I can influence him." He also enquired. of Jeter if he knew that money could be used on the jury, to which Jeter responded that he did not, and would not use money if he could, whereupon Little left him, saying he would see him again. A few days after this conversation took place, Little met Jeter and said to him : "There are two or three of those jurymen who live here, and I know I can have a great deal of influence over them, and if you will furnish $200 I can assure you of the acquittal of your son." Jeter again refused to attempt to corrupt the jury, and Little then said : "If you can not get $200, can not you get $100; I can do a great deal of good with $100." For a second time, Jeter met him with a re-

fusal. A third time the proposition was renewed and a third time rejected. In the testimony given by the appellant, he admitted that he had endeavored to secure money from Jeter; denied that he had attempted or expected to corrupt any juror or officer; asserted that his purpose was not to secure money to corrupt the jury, but that he intended to swindle Jeter out of his money by false pretences of ability to corruptly influence the jurors. Appellant was adjudged guilty of contempt, and from that judgment prosecutes this appeal.

Courts of justice possess powers which were not given by legislation, and which no legislation can take from them. Judicial power exists only in the courts; it can not live elsewhere. *Underwood* v. *McDuffee,* 15 Mich. 361; *Chandler* v. *Nash,* 5 Mich. 409; *Shoultz* v. *McPheeters,* 79 Ind. 373. There are inherent powers resident in all courts of superior jurisdiction. These powers spring, not from legislation, but from the nature and constitution of the tribunals themselves. *United States* v. *Hudson,* 7 Cranch, 32; *Sanders* v. *State,* 85 Ind. 318 (44 Am. R. 29); *Cavanaugh* v. *Smith,* 84 Ind. 380; *Nealis* v. *Dicks,* 72 Ind. 374. The judiciary is a co-ordinate department of the government, and is not a mere subordinate branch, dependent for existence and power upon the legislative will. Purely judicial powers, inherent in courts as of the essence of their existence, are not the creatures of legislation, and these powers are inalienable and indestructible.

Among the inherent powers of a court of superior jurisdiction is that of maintaining its dignity, securing obedience to its process and rules, protecting its officers and jurors from indignity and wrong, rebuking interference with the conduct of business, and punishing unseemly behavior. This power is essential to the existence of the court. Without the power to punish for contempt, no others could, as decided in *United States* v. *Hudson, supra,* be effectively exercised. There is no doubt that the power to punish for contempt is an inherent one, for, independent of legislation, it exists, and has always existed, in the courts of England and America. It

is, in truth, impossible to conceive a superior court as existing without such a power.

The Legislature may regulate the exercise of this power—may prescribe rules of practice and procedure, but it can neither take it away nor materially impair it. In the case of *Neel* v. *State,* 9 Ark. 259, the court said: "The right to punish for contempts in a summary manner, has been long admitted as inherent in all courts of justice and in legislative assemblies, founded upon great principles, which are co-eval, and must be co-existent, with the administration of justice in every country—the power of self-protection. * * * * It is a branch of the common law brought from the mother country and sanctioned by our Constitution." In another opinion by the same court it is said: "The Legislature may regulate the exercise of, but can not abridge the express or necessarily implied powers, granted to this court by the Constitution. If it could, it might encroach upon both the judicial and executive departments, and draw to itself all the powers of government: and thereby destroy that admirable system of checks and balances to be found in the organic framework of both the Federal and State institutions, and a favorite theory in the governments of the American people." *State* v. *Morrill,* 16 Ark. 384. In that case the whole subject is well discussed, and it was held that the Legislature could not restrict the power to punish for contempt to acts defined and enumerated in a statute. The Supreme Court of Illinois, in *People* v. *Wilson,* 64 Ill. 195, declare a like doctrine, the court saying: "This court held, in an early case, that the power to punish for contempts was an incident to all courts of justice, independent of statutory provisions. *Clark* v. *The People,* Breese, 340. Courts in other States have also announced the doctrine that this power is inherent in all courts of justice—necessary for self-protection, and an essential auxiliary to the pure administration of the law." In our own reports, we have cases emphatically asserting the doctrine that the power to punish for contempt is inherent in courts of justice, and exists without

and independent of legislative enactment. *Ex parte Smith,* 28 Ind. 47; *Brown* v. *Brown,* 4 Ind. 627. There are many cases sustaining this doctrine, and we cite a few of the many: *State* v. *Matthews,* 37 N. H. 450; *Com.* v. *Dandridge,* 2 Vir. Cases, 408; *Ex parte Biggs,* 64 N. C. 202.

As the court possessed the inherent power to punish contempts independently of legislation, it is not material that acts such as that committed by the appellant are not defined in our statute concerning contempts of court. The fact that the act is not embraced in any of the statutory definitions of a contempt does not deprive the court of the power to treat and punish it as a contempt, if it be really such. Where the act constitutes a contempt, then the courts may so adjudge it, although it is not within the statutory provisions upon the subject. It is not the legislative declaration that constitutes an act a contempt; it may be such although there is no statute so declaring. It is, indeed, not for the Legislature to declare what the courts shall or shall not consider to be a contempt; that power rests with the judiciary; for to hold differently would result in placing the whole subject within the absolute control of the legislative department, and would thus withdraw from the courts one of the primary and essential elements of their constitution and existence.

One who does a wrongful act for the purpose of bringing unmerited disgrace upon the officers of the court, or the members of the jury, is guilty of a contempt. One who, for the purpose of securing money for himself, falsely pretends to another interested in the result of a cause, that he can corruptly influence with money the jurors trying the cause to return such a verdict as he desires, is guilty of a contempt. Such an act tends to disgrace and degrade the jury in the mind of the person to whom the corrupt proposition is submitted. No man has a right to falsely insinuate that he can, by corrupt means, influence jurors in the performance of their duty. It would be a reproach to the law, if shameless men were permitted to slander honest officers and jurors by vile insinuations; but

the law is not subject to this reproach, for it lodges in the courts ample authority to punish such men, and to fully protect jurors and officers from such calumniators. It is the purpose of the law to secure a pure and unobstructed administration of justice, to preserve the jurors from temptation and evil, and to banish from the court-rooms all who are base enough to suggest the bribery of officers or jurors. It is also the purpose of the law that honest officers and jurors shall not be degraded or disgraced by unprincipled slanderers, who, for selfish purposes, make false charges against them. It is likewise the intention of the law that courts shall have the means of commanding merited respect not only for themselves but also for all who are engaged in the administration of the law as officers or jurors of the court.

It is not every light remark made of a juror or an officer, criticising his conduct or questioning his motives, that will constitute a contempt within the meaning of the law; but where, for the purpose of securing money, a charge is made against a juror in a pending trial that he can be corruptly influenced with money, there is a contempt, and one deserving prompt punishment. This was in effect the statement made by the appellant; it was not, as counsel ingeniously argue, like a light remark hastily dropped, or one made in angry criticism, but it was an insinuation deliberately made for a corrupt purpose, and one which tended to disgrace and degrade jurors then engaged in the discharge of their duties in a cause of great importance. The deliberate purpose in making the statement was to create in the mind of the hearer a belief that the jurors were dishonest and could be bribed, and this is very different from cases put by counsel of merely disparaging remarks made by persons of courts, officers and jurors. In the one case, there is the deliberate and corrupt purpose to create a belief of the dishonesty of the jury; in the other, these elements are absent.

Judgment affirmed.