Shauck, J.
The case submitted to us concedes that the evidence produced in the court of common pleas established the allegations of the information. The question of law presented by the record herd is whether that court erred in overruling the motion in arrest of judgment, which challenged the sufficiency of the information and the jurisdiction of the court to try the accused summarily.
We do not understand counsel for the plaintiff in error to deny either that the act charged was a contempt at common law or that the court may punish *212 summarily any act which, under the statute, is a contempt of court.
Their contention is that it is within the authority of the legislature to abridge the power of courts in this regard, and that such authority has been exercised in the enactment of sections 6906 and 6907 of the Revised Statutes, which make certain acts, formerly punishable as contempts, punishable by indictment as “offenses against public justice.” The former section provides for the punishment of persons who, in the manner pointed out, evaae the service of subpoenas or refuse to appear and testify after service. It contains the express provision that “this section shall not prevent summary proceedings for contempt.” The latter section provides for the punishment of persons who “corruptly, or by threats of force, endeavor to influence, intimidate, or impede, any juror, or witness * * * in the discharge of his duty, etc.; ” and it is not by any express provision made cumulative to summary proceedings for contempt. It is said that the actual removal of the witness from the jurisdiction of the court which this information charges, is wholly comprehended within the attempt to influence to which the statute affixes a penalty; and that from the omission of words making the section cumulative to summary proceedings for contempt, it results that it is exclusive of such proceedings.
However justifiable this inference might be, if a proper view comprehended the provisions of the statute alone, it will, according to a familiar rule, be a sufficient reason for rejecting it, if it leads to such an interpretation of the statute as would impute to the general assembly an intention to exercise power which it does not possess.
*213 The difference between the jurisdiction of courts and their inherent powers is too important to be overlooked. In constitutional governments their jurisdiction is conferred by the provisions of the constitutions and of statutes enacted in the- exercise of legislative authority. That; however, is not true with respect to such powers as are necessary to the orderly and efficient exercise of jurisdiction. Such powers, from both their nature and their ancient exercise, must be regarded as inherent. They do not depend upon express constitutional grant, nor in any sense upon the legislative will. The power to maintain order, to secure the attendance of witnesses to the end that the rights . of parties may be ascertained, and to enforce process to the end that effect may be given to judgments, must inhere in every court or the purpose of its creation fails. Without such power no other could be exercised.
When constitutional governments were established upon this continent there was general familiarity with the course of judicial proceedings in the administraton of the common law. .This power had long been exercised by courts as inherent. It was within every conception of a judicial court. The view of the question, then, generally taken, was stated by Chief Justice McKean, in 1788: “Not only my brethern and myself, but, likewise, f all the judges of England think that without this power no court could possibly exist; nay, that no contempt could, indeed, be committed against us, we should be so truly contemptible. The law upon this subject is of immemorial antiquity; and there is not any period when it can be said to have ceased or discontinued. ” Res publica v. Oswald, 1 Dallas Pa.) 343. The power, therefore, arose *214 upon the creation of a court because it was implied in every conception of a court.
A people does not lose majesty by achieving liberty. The powers of government are the same, whatever may be the form. Here, the people possessing all governmental power, adopted constitutions completely distributing it to appropriate departments. They created courts, and, in some instances, authorized the legislatures to create others. The courts so created and authorized have all the powers which are necessary to their efficient action, or embraced within their commonly received definition. The power in question was lodged permanently in the courts to be exercised by those who, for the time being, may be charged with the performance of judicial duties. But judges may not remain in office and resign their functions. The suggestion that this power may be abused raises no doubt as to its existence. In the Virginia convention, assembled to .‘adopt or reject the proposed federal constitution, John Marshall answered this suggestion, and anticipated every occasion upon which it may be urged: “All delegated power is liable to be. abused. Arguments drawn from that source go in direct opposition to all government, and in recommendation of anarchy. ” In making the constitutional distribution of the powers of government, the people assumed that the several departments would be •equally careful to use the powers granted for the public good alone. Accordingly we have the familiar and generally accepted doctrine that none of the several departments are subordinate, but that all are co-ordinate. It is not, therefore, within the discretion of the judicial department to refuse to enforce a criminal • statute because to it the *215 prohibited act may seem innocent or the prescribed penalty excessive. The power of commitment for contempt has long been regarded as inherent in legislative bodies. It is not expressly granted. If it were not inherent it could not .be created by the act of the legislature itself. The existence of that power was recognized by this court in Ex parte Dalton, 44 Ohio St. 142. The power we now assert is co-relative of that which was there recog-' nized. That it is not contempt for the legislature to abridge the power of courts to punish summarily such wrongful acts as obstruct the administration of justice has been held in well-considered cases. The conclusion is a necessary inference from the very numerous cases in which it has been held that the power inheres in courts independently of legislative authority. A power which the legislature does not give, it cannot take away. If power, disting’uished from jurisdiction, exists independently of legislation, it will continue to exist notwithstanding legislation.
Prom the numerous cases sustaining these views, the following are selected because of their elaborate review of the authorities or their clear and vigorous statement of the principles involved. State v. Frew & Hart, 24 W. Va. 416; Little v. State, 90 Ind., 338; Yates v. Lansing, 5 Johns, 282; State v. Morrill, 16 Ark., 384; Arnold v. The Commonwealth, 30, Ky., 300; People v. Wilson, 64 Ills., 195; In re Wooley, 11 Ky., 95; United States v. Hudson Goodwin, 7 Cranch, 32; Watson v. Williams,
36 Miss., 331; Darby's Case, 3 Wheeler’s Crim. Cases, 1; Neel v. State, 4 Eng. 259; State v. Matthews, 37 N. H., 450; Cartright's Case, 114 Mass. 230. In the case before us, a court, created by the constitution punished summarily, as for a contempt, *216 one guilty of a wrongful act which, interfered, with the exercise of .its jurisdiction. Upon a careful examination of the reported cases we find but one which seems to deny its power to do so. We are not concerned with eases which hold- that the power may be exercised by courts or legislative bodies only when they are proceeding within the sphere of duty when the alleged contempt is committed. However clear it may seem from a consideration of the principles involved that the authority conferred by the constitution upon the legislature to create additional courts, has reference only to courts with all the attributes and inherent powers that are requisite to the efficient performance of judicial duties, we are not now concerned with any reported case which holds that the legislature may create a judicial tribunal without power to enforce respect for its sessions ,its writs or its process.
We are mindful that in reviewing the judgment of the circuit court in this case, we are exercising jurisdiction conferred by the statute, as was the circuit court when it reviewed the judgment of the court of common pleas. This we do without doubt as to the validity of the statute which authorizes the review. It does not in any manner, or to any degree limit the power of the judicial department of the government of the state. Its object is to diminish as much as may be the liability of the power to abuse, but without assuming a revisory authority in another department.
The sections of the statute considered do not in terms seek to limit the judicial power considered, and it would be indecorous to place such construction upon them as would impute to the general assembly either ignorance of the limitations upon its *217 authority or a purpose to transcend them. We conclude that the insertion of the provision in section 6906, making its provisions cumulative to summary proceeding’s for contempt, was not necessary to that end, and that its omission from section 607 is not significant.
In Baldwin v. The State, 11 Ohio St., 681, without statement of reason or citation of authority, a conclusion is announced apparently in conflict with the views here expressed. That case is overruled.

Judgment affirmed.

Minshall J., dissents.