## BUCKINGHAM ET AL. *v.* KERR, TREASURER OF UNION CITY.

[No. 9,593.   Filed October 10, 1918.]

1. MUNICIPAL CORPORATIONS. — *Statute.* — *Street Improvements.* — *Construction.*—In ascertaining the legislative intent in enacting §8710 *et seq.* Burns 1914, Acts 1905 p. 236, as amended, Acts 1909 p. 412, relative to assessments for street improvements, etc., the court must consider the question in the light of the rule requiring such statutes to be strictly construed.   p. 294.

2. MUNICIPAL CORPORATIONS.—*Street Improvements.—Assessments.* —The process prescribed by §8716 Burns 1914, Acts 1909 p. 412, for determining what property is "liable to be assessed" for proposed street improvements is essentially one of taxation.   p. 294.

3. MUNICIPAL CORPORATIONS.—*Street Improvements.—Assessments.* —*Property Affected.—Statute.*—The provision in §8714 Burns 1914, Acts 1909 p. 412, that property abutting on a street to be improved shall be primarily assessed without regard to depth is not intended

to extend the limits of the special tax district beyond 150 from the line of the street as provided by §8716 Burns 1914, Acts 1909 p. 412. p. 294.

4. MUNICIPAL CORPORATIONS.—*Street Improvements.*—*Excessive Assessments.*—*Remedy.*—Though a lot is of such little depth that its portion of the primary assessment for street improvements exceeds its value, the entire portion of such assessment must be levied upon it; but a readjustment to avoid confiscation may be made after a hearing under §8714 Burns 1914, Acts 1909 p. 412. p. 295.

5. MUNICIPAL CORPORATIONS.—*Street Improvements.*—*Assessments.* —*Apportionment as Between Adjacent Owners.*—Though special assessments for street improvements are levied primarily on the property adjoining the street, the common council may, after a hearing under §8714 Burns 1914, Acts 1909 p. 412, relieve an owner of such adjoining property from an inequitable assessment by transferring a portion of the primary assessment to adjacent property lying back of that adjoining the street and within the assessment district; and in such case the element of diverse ownership may not be ignored, since a levy of the entire assessment on the two tracts without an apportionment of a specific share to each might result in irremediable injustice. p. 295.

6. MUNICIPAL CORPORATIONS.—*Street Improvements.*—*Assessments. Apportionment.*—The plan provided in §8714 Burns 1914, Acts 1909 p. 412, for carrying back a portion of the primary assessment for street improvements from property abutting the street and distributing it on successive tracts in the rear; constitutes the only method by which such adjacent tracts may be assessed, whether there be diverse ownership or not. p. 295.

7. MUNICIPAL CORPORATIONS.—*Street Improvements.*—*Assessments.* —*Property Liable.*—In carrying back from abutting property to adjacent tracts portions of the primary assessment for street improvements, under §8714 Burns 1914, Acts 1909 p. 412, no intervening tract may be ignored, but the several tracts must be assessed consecutively; in this manner portions of the primary assessment may be carried back 150 feet, though no assessment can extend across another street, even if owned by the same person and within 150 feet. p. 295.

8. MUNICIPAL CORPORATIONS.—*Street Improvements.*—*Power of Common Council.*—*Nature of.*—Though the action of the common council in levying street improvement assessments bears some resemblance to judicial action, the council is not even an inferior court, and therefore cannot exercise judicial power; the only instance in which the council acts independently or *quasi*-judicially is in carrying back portions of the primary assessment from abut-

ting property to adjacent tracts, all other powers in levying assessments being purely ministerial. pp. 297, 298.

9. MUNICIPAL CORPORATIONS.—Street Improvements.—Assessments. —Injunction.—Collateral Attack.—Where the common council levied an assessment for street improvements on property that did not abut on the street and was not adjacent to abutting property, but was separated therefrom by another public thoroughfare, though it belonged to parties owning the abutting property, the action was void; and it was not necessary for the owners to appear in the proceeding to protect their rights or to seek relief by appeal to the circuit court, but they could bring a separate action to enjoin the illegal assessment, since the only question reviewable on appeal to the circuit court is the amount of the assessment, the right of appeal being expressly denied as to an assessment on property not liable. pp. 299, 300.

10. ESTOPPEL.—Pleading.—Demurrer.—Raising Defense.—Since an estoppel must be specially pleaded, the question of its existence may not be raised by demurrer to the complaint. p. 300.

From Randolph Circuit Court; *Theodore Shockney*, Judge.

Action by Jefferson M. Buckingham and others against Elmer Kerr, treasurer of Union City. From a judgment for the defendant, the plaintiffs appeal. *Reversed.*

*L. L. Taylor, Macy, Nichols, Goodrich & Bales,* for appellants.

*Shockney & Chattin,* for appellee.

DAUSMAN, J.—The thirteen appellants herein are the heirs of one Benjamin F. Buckingham, deceased, and they instituted this action against appellee to enjoin the sale of a tract of land for the collection of a special assessment levied thereon in a street improvement proceeding.

The complaint discloses the following facts: Appellants own land in Union City. A public street of said city, known as the Union City and Winchester Pike, runs diagonally across their land from north-

west to southeast, and divides it into two separate and distinct tracts. Another public street of said city known as Oak street, runs east and west. The Union City and Winchester Pike merges into Oak street. The south tract of appellants' land is triangular, and lies between the two streets. The north tract does not abut on Oak street.

Under the supervision of the common council Oak street was improved by paving. The cost of paving that part of Oak street representing the junction of two streets was paid by the city. Appellants' tracts of land were not assessed separately; but the sum of $570.80 was levied on both tracts, as if the two in reality constituted a single tract. Appellants ask that the court enjoin the sale of the north tract only. The following diagram will aid in understanding the averments of the complaint.

A demurrer to the complaint for want of facts was sustained, and appellants refused to plead further. Judgment accordingly.

(1) The question presented by this appeal calls for an interpretation of those sections of the statute by which the legislature conferred on munici-

1. palities the power to levy special assessments on real estate for the purpose of collecting a fund with which to pay in whole or in part the cost of improving streets by paving. §8710 *et seq.* Burns 1914 (Acts 1905 p. 236, as amended, Acts 1909 p. 412). While endeavoring to ascertain the legislative intent, we must keep constantly in mind the rule that statutes of this kind are to be strictly construed. *City of Frankfort* v. *State* (1891), 128 Ind. 438, 27 N. E. 1115; *Barber Asphalt Pav. Co.* v. *Edgerton* (1890), 125 Ind. 455, 461, 25 N. E. 436.

When levying these special assessments the common council is exercising the power of taxing, and is exercising that power in a very special way. Naturally, therefore, the plan suggests the need for a special tax district.

The first step in street improvement under this statute is the adoption of a preliminary resolution declaring the intention to make the improvement.

2. Notice is then given to all persons whose property is "liable to be assessed." Before proceeding further the common council must de-

3. cide whether the benefits to the property "liable to be assessed" for the improvement will equal the estimated cost thereof. How is the common council to know what property is "liable to be assessed?" The legislature has determined that by prescribing a special tax district. In §8716, *supra,*

it is called "the benefit district." This language may disguise, but cannot alter, the fact that the process is essentially one of taxation. The legislature has fixed the maximum limits of the special tax districts at 150 feet from either line of that portion of the street to be improved. No land outside this district is "liable to be assessed" in any event. True, the statute provides that lots bordering on the street to be improved shall be primarily assessed without regard to their depth; but this provision is not intended to enlarge the special tax district. It is for another purpose.

It may happen that an abutting lot is of little depth, and that its portion of the primary assessment exceeds its value. Nevertheless that entire portion must be levied upon it; but a readjustment to avoid confiscation may be made after a hearing. §8714 Burns 1914, *supra.*

But it does not follow that all land within that district is "liable to be assessed." The legislature assumed that the land within any special tax district probably would be divided into tracts; and it has ordained that the tracts abutting on the street to be improved shall be primarily liable, and that adjacent tracts shall be secondarily liable only. In this connection the legislature has had a proper regard for the element of diverse ownership. It may happen that certain land within the special tax district is divided in ownership in such manner that the front tract, abutting on the street to be improved, is owned by A; and that the next tract back of A's, and having no street frontage, is owned by B. In that case A's land is primarily liable, as abutting land, for the

entire assessment computed according to the number of linear feet on the street line, and B's land is not primarily liable for any assessment whatsoever. But if it should be unfair as between A and B to burden A's land with the entire assessment, the common council, after the parties have had a hearing, may relieve A's land by transferring a portion of the primary assessment to the land of B, thus distributing the primary assessment in such amounts as will be equitable to these owners. In such cases the element of diverse ownership may not be ignored; for if the entire assessment should be levied on the lands of A and B, without apportioning a specific share to each, irremediable injustice might result. If there should be unity of ownership of such tracts the reason for assessing a specific amount upon each tract is not so apparent. Nevertheless this plan of carrying a portion of the primary assessment back from the tract abutting on the street and distributing it on the successive tracts in the rear, constitutes the only method by which "adjacent" lands may be assessed, whether there be diverse ownership or not. In carrying back portions of the primary assessment the several tracts must be assessed in their consecutive order. No intervening tract may be ignored. In this manner portions of the primary assessment may be carried back 150 feet from the street line, but no further. However, to the last statement there is an exception, viz., no assessment, whether primary or secondary, can extend to land across another street, even though the land on either side of such other street is owned by the same person and is within 150 feet of the street to be improved. In other words, if there be a parallel or diagonal street within 150

feet of the street to be improved, the effect is to cut off and put outside the special tax district a portion of the land which otherwise would be within that district, and the area of the special tax district is thereby accordingly reduced. This was the holding of the Supreme Court under the prior statute. *City of Frankfort* v. *State, supra.* And we are of the opinion that it is a fair conclusion to be drawn from all the provisions of the statute now in force.

But appellee contends that, regardless of other considerations, this action must fail (1) because it is a collateral attack on the decision of the common council; (2) because the landowner had the right of appeal to the circuit court; and (3) because of the law of estoppel.

It is true that the action of a common council in levying street improvement assessments is *quasi*-judicial; that is to say, it has some resemblance to judicial action. But the common council is not a court—not even an inferior court, and therefore cannot exercise judicial power. *Flournoy* v. *Jeffersonville* (1861), 17 Ind. 169, 79 Am. Dec. 468; *State, ex rel.* v. *Board, etc.* (1874), 45 Ind. 501; *Waldo* v. *Wallace* (1859), 12 Ind. 569, 583; *Shoultz* v. *McPheeters* (1881), 79 Ind. 373; *Little* v. *State* (1883), 90 Ind. 338, 46 Am. Rep. 224; *Pressley* v. *Lamb* (1886), 105 Ind. 171, 4 N. E. 682; *Vandercook* v. *Williams* (1885), 106 Ind. 345, 1 N. E. 619, 8 N. E. 113; *State, ex rel.* v. *Noble* (1889), 118 Ind. 350, 21 N. E. 244, 4 L. R. A. 101, 10 Am. St. 143; *State, ex rel.* v. *Denny* (1889), 118 Ind. 382, 21 N. E. 252, 4 L. R. A. 79; *State, ex rel.* v. *Hyde* (1889), 121 Ind. 20, 22 N. E. 644; *Board, etc.* v. *Stout* (1893), 136 Ind. 53, 35 N. E. 683; *Miller* v. *State* (1897), 149 Ind. 607, 49 N. E. 894, 40

L. R. A. 109; *Betts* v. *New Hartford* (1856), 25 Conn. 180; *Foot* v. *Stiles* (1874), 57 N. Y. 399. The truth is that the proceeding of a common council in a street improvement matter which results in the imposition of a special assessment bears a very faint resemblance to the proceeding of a court in a civil action which results in the rendition of a judgment. To adopt this meager analogy as the basis of reasoning when determining the validity of a special assessment serves only to confuse.

Every administrative officer in the discharge of his daily duties must determine for himself the facts on which he acts and must construe and apply the law. Nevertheless, where there is no right of appeal his decisions are subject to review by the courts when attacked collaterally. To hold otherwise would be to clothe a ministerial officer with power to inflict upon the citizen gross injustice and oppression by perverting the law and distorting the facts. *Dorn* v. *Backer* (1874), 61 N. Y. 261; *Matter of New York Catholic Protectory* (1879), 77 N. Y. 342; *Beardslee* v. *Dolge* (1894), 143 N. Y. 160, 38 N. E. 205, 42 Am. St. 707. The same rule is applicable to administrative boards and commissions, and to such governmental agencies as common councils of cities, when acting in an administrative capacity.

The duty to determine whether any abutting tract should be relieved of a portion of the primary assessment rests upon the common council; and if it 8. concludes that such relief should be granted, then the further duty rests upon it to determine the portion which should be carried back to each consecutively adjoining tract. This is the only instance in the process of levying assessments where-

in the common council is authorized to use its own independent judgment, and is the only instance wherein it rightly may be said that the common council acts *quasi* judicially. (There is no such action involved in this case.) All the rest is fixed arbitrarily by the statute; and in levying all other assessments the common council acts in a purely ministerial capacity.

Did the common council have authority in law to assess appellants' north tract? In other words, did the common council in making the pretended 9. assessment act in accordance with the law and the facts? Evidently the legislature was of the opinion that it would be unwise to give the common council a free hand in the matter of levying assessments. The power of the common council to levy assessments is limited to lands "liable to be assessed." This feature runs throughout the statute and is emphasized by the frequent repetition of the words "liable to be assessed." The legislature has determined what lands are liable to be assessed, and the common council has no authority to assess any other land. The statute enables the owner of real estate to know in advance whether his land is liable to be assessed. If under the statute his land or any part of it is not liable to be assessed, even though it be located in the neighborhood of the proposed improvement, he need not appear before the common council at any stage of the proceeding for the purpose of protecting his property from an unlawful assessment; but he may rest in the assurance afforded by the statute.

From the averments of the complaint it clearly appears that appellants' north tract does not abut on

the improved street; that it is not adjacent to 9. the improved street in the sense that it is liable for a portion of any primary assessment that might be carried back from abutting land between it and the improved street; and, finally, that it is separated from the improved street by another public thoroughfare. It follows that the common council had no authority to assess said north tract and that the pretended assessment thereon is void.

(2) On appeal to the circuit court the only question that may be reviewed is the amount of the assessment. To avail himself of the benefit of an appeal to the circuit court a landowner must admit, at least for the purpose of the appeal, that his land is liable to be assessed for some amount. As to lands not liable to be assessed, the right of appeal is expressly denied. §8716, supra. In the case at bar the only remedy is by injunction.

(3) The question of estoppel did not arise on the demurrer. Estoppel must be specially pleaded. Work's Practice §606; Webb v. John Hancock, 10. etc., Ins. Co. (1903), 162 Ind. 616, 69 N. E. 1006, 66 L. R. A. 632; Troyer v. Dyar (1885), 102 Ind. 396, 1 N. E. 728.

The judgment is reversed; and the trial court is directed to overrule the demurrer.

Caldwell, C. J., did not participate in the disposition of this cause.

NOTE.—Reported in 120 N. E. 422. Liability of abutting owner to pay assessments for public improvements, 18 L. R. A. (N. S.) 1259, 29 L. R. A. (N. S.) 770. See under (3, 4) 28 Cyc 1123; (5) 28 Cyc 1185; (9) 28 Cyc 1183.