



FILED

May 29 2020, 12:47 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 19S-PL-645

## River Ridge Development Authority,
*Appellant (Plaintiff)*

–v–

## Outfront Media, LLC, David Watkins, No Moore, Inc., the Schlosser Family Limited Partnership, the Town of Utica, and the Utica Board of Zoning Appeals,
*Appellees (Defendants)*

---

Argued: January 30, 2020 | Decided: May 29, 2020

Appeal from the Clark Circuit Court, No. 10C02-1709-PL-99
The Honorable Richard Striegel, Senior Judge

On Petition to Transfer from the Indiana Court of Appeals,
No. 18A-PL-2347

---

**Opinion by Chief Justice Rush**
Justices David, Massa, Slaughter, and Goff concur.

**Rush, Chief Justice.**

The guardrails of zealous advocacy must leave ample room for a party to make its case. But when a party veers off course by intentionally introducing groundless arguments, harassing other parties, or acting in bad faith, courts can punish the behavior.

Generally, the American Rule requires each party to pay its own attorney's fees. While this rule has narrow exceptions that allow a court to order one party to pay another's fees, it is a hefty burden to demonstrate that such an award is warranted.

Today we discuss three grounds that permit a court to shift attorney's fees under Indiana law and find that, on this record, the parties seeking fees failed to show that any exception applied. We thus find that the trial court's decision to award attorney's fees was an abuse of discretion and reverse.

# Facts and Procedural History

River Ridge Development Authority (RRDA) oversees the construction and development of the River Ridge Commerce Center. The Commerce Center is a business and manufacturing park located along State Road 265 near the Ohio River and the Town of Utica.

In 2017, RRDA was in the midst of planning a $25 million expansion to the Commerce Center, including a new entrance off the state road. During this time, RRDA discovered that Outfront Media, LLC—an outdoor advertising company—and its employee David Watkins had obtained permits from both the Utica Town Council and the Indiana Department of Transportation (INDOT) to construct seven billboards along State Road 265. The billboards would be built on parcels of land that were owned by No Moore, Inc. and the Schlosser Family Limited Partnership. Because each parcel was located near the Commerce Center's planned entrance, RRDA was concerned that the proposed billboards would harm its investment.

Hoping to prevent their construction, RRDA sued Outfront Media, Watkins, No Moore, the Schlosser Family Limited Partnership, the Town of Utica, INDOT, and the INDOT commissioner. RRDA sought, in part, a declaration that the billboards violated Utica's zoning ordinance. RRDA later amended its complaint—dismissing several claims, including those against the INDOT defendants, and adding a claim against the Utica Board of Zoning Appeals (BZA).

During this litigation, Outfront Media completed three of its seven proposed billboards. Before their construction, however, the Louisville–Jefferson County KY–IN Metropolitan Planning Organization had contacted INDOT to nominate the relevant portion of State Road 265 for scenic-byway status. This designation would prevent Outfront from building the four remaining billboards. Eight months later, INDOT recommended approval for that stretch of the state road to become a scenic byway; and RRDA voluntarily dismissed its complaint with prejudice the same day.

Outfront Media, Watkins, No Moore, the Schlosser Family Limited Partnership, the Town of Utica, and the Utica BZA (Defendants) all filed motions to recover attorney's fees, claiming RRDA's behavior during the lawsuit justified such an award. After a hearing, the trial court granted the motions in full. The court concluded that three "independent bases" permitted its $237,440.63 award: the common-law obdurate behavior exception to the American Rule, Indiana's statutory General Recovery Rule, and the court's inherent authority to sanction parties.

The Court of Appeals reversed. *River Ridge Dev. Auth. v. Outfront Media, LLC*, 129 N.E.3d 239, 251 (Ind. Ct. App. 2019). We granted transfer, vacating the Court of Appeals opinion. Ind. Appellate Rule 58(A).

## Standard of Review

We review a trial court's award of attorney's fees for an abuse of discretion. *Purcell v. Old Nat'l Bank*, 972 N.E.2d 835, 843 (Ind. 2012). An abuse of discretion occurs when the court's decision either clearly contravenes the logic and effect of the facts and circumstances or

misinterprets the law. *Id*. To make this determination, we review any findings of fact for clear error and any legal conclusions de novo. *Id.*

## Discussion and Decision

The general rule in Indiana, and across the country, is that each party pays its own attorney's fees; and a party has no right to recover them from the opposition unless it first shows they are authorized. *Loparex, LLC v. MPI Release Techs., LLC*, 964 N.E.2d 806, 815–16 (Ind. 2012). Known as the American Rule, this doctrine reflects a compromise between keeping courts open to all and allowing attorneys the freedom to contract with clients. *See id.* at 815.

But the rule is not without exceptions. Statutes can authorize courts to award attorney's fees, and courts have carved out exceptions to the American Rule using their inherent equitable powers. *See* Ind. Code § 34-52-1-1 (2019); *State Bd. of Tax Comm'rs v. Town of St. John*, 751 N.E.2d 657, 658 (Ind. 2001). Today, we discuss three grounds, under Indiana law, that enable a court to award a party attorney's fees.

First, the common-law "obdurate behavior" exception empowers a court to order a prevailing party, under certain circumstances, to pay the opposition's attorney's fees. *See Kikkert v. Krumm*, 474 N.E.2d 503, 505 (Ind. 1985). Second, the General Recovery Rule, Indiana Code section 34-52-1-1, similarly allows an award of attorney's fees "to the prevailing party" based on another party's actions during litigation. I.C. § 34-52-1-1(b). And finally, courts are inherently authorized to sanction parties by shifting fees, even if no other exception applies. *See In re Estate of Kroslack*, 570 N.E.2d 117, 121 (Ind. Ct. App. 1991).

Here, the trial court concluded that it could award attorney's fees to the Defendants under all three grounds. We hold, however, that the trial court's decision was an abuse of discretion. Neither the common-law obdurate behavior exception nor the General Recovery Rule—both of which require a "prevailing party"—allow an award of attorney's fees when a party voluntarily dismisses its complaint, as RRDA did here. And the court's inherent authority does not authorize the award because the

record lacks evidence to show that RRDA litigated in bad faith and that its conduct was calculatedly oppressive, obdurate, or obstreperous. We thus reverse the trial court's order.

# I. The common-law obdurate behavior exception and the General Recovery Rule do not allow an award of attorney's fees when a party voluntarily dismisses its complaint.

Both the common-law obdurate behavior exception and the statutory General Recovery Rule permit a court, in certain circumstances, to award attorney's fees—but only to a "prevailing party." We find that the Defendants are not prevailing parties and thus fail to meet this threshold requirement. And we further explain that the common-law obdurate behavior exception remains in force, despite incorporation into the General Recovery Rule.

## A. The Defendants are not prevailing parties under either the common-law exception or the General Recovery Rule.

Our Court of Appeals first recognized the common-law "obdurate behavior" exception in 1973. *Saint Joseph's Coll. v. Morrison, Inc.*, 158 Ind. App. 272, 279–81, 302 N.E.2d 865, 870–71 (1973), *trans. denied*. And this Court embraced it twelve years later. *Kikkert*, 474 N.E.2d at 505 (citing *Cox v. Ubik*, 424 N.E.2d 127, 129 (Ind. Ct. App. 1981)). This exception—which reimburses a "prevailing party"—applies when a party knowingly files or fails to dismiss a "baseless claim" and a trial court finds the conduct "vexatious and oppressive in the extreme and a blatant abuse of the judicial process." *Id.*

One year after we adopted the common-law exception, the General Assembly amended the General Recovery Rule. *See* Pub. L. No. 193-1986, 1986 Ind. Acts 1944 (pertinent section codified at I.C. § 34-52-1-1(b)). It now allows a court "[i]n any civil action" to award attorney's fees "as part

of the cost to the prevailing party" if another party "(1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless; (2) continued to litigate the action or defense after the party's claim or defense became frivolous, unreasonable, or groundless; or (3) litigated the action in bad faith." I.C. § 34-52-1-1(b). The statute balances an attorney's duty to zealously advocate with the goal of deterring unnecessary and unjustified litigation. *Mitchell v. Mitchell*, 695 N.E.2d 920, 924 (Ind. 1998). The General Recovery Rule is strictly construed because it "is in derogation of the American Rule observed under the common law." *D.S.I. v. Natare Corp.*, 742 N.E.2d 15, 22 (Ind. Ct. App. 2000), *trans. denied*.

Both exceptions include the same threshold requirement: a party must be a "prevailing party" before a court can award attorney's fees. RRDA argues that the Defendants are not prevailing parties because they never obtained a favorable judgment on the merits. We agree and find that the Defendants cannot satisfy this requirement under either the common law or the General Recovery Rule.

We begin with the ordinary and historical legal understanding of the term "prevailing party." Black's Law Dictionary defines the phrase as "[a] party in whose favor a judgment is rendered." *Prevailing Party*, Black's Law Dictionary 1298 (10th ed. 2014). In other words, if a party does not receive a favorable judgment, then it is not a "prevailing party." We find support for interpreting this term the same way under both the General Recovery Rule and the common-law obdurate behavior exception.

As for the General Recovery Rule, prior decisions from our Court of Appeals interpreting the statute have already defined "prevailing party" as "one that recovers a judgment." *In re Paternity of P.E.M.*, 818 N.E.2d 32, 38 (Ind. Ct. App. 2004); *see also State Wide Aluminum, Inc. v. Postle Distribs., Inc.*, 626 N.E.2d 511, 517 (Ind. Ct. App. 1993), *trans. denied*; *State ex rel. Prosser v. Ind. Waste Sys., Inc.*, 603 N.E.2d 181, 189–90 (Ind. Ct. App. 1992). Decisions from the Supreme Court of the United States construing "prevailing party" in analogous federal statutes have reached a similar conclusion. For example, the Court has held that a party prevails when it obtains "actual relief on the merits" of the claim, which "materially alters the legal relationship between the parties." *Farrar v. Hobby*, 506 U.S. 103,

111–12 (1992). And the Court, interpreting multiple federal fee-shifting statutes, concluded that the "clear meaning" of the term requires a party to obtain some judicial relief to prevail. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 606–608 (2001). We find these decisions instructive and thus conclude that, under the General Recovery Rule, a party must obtain a favorable judgment on the merits or comparable relief to qualify as a "prevailing party."

We reach the same conclusion in interpreting "prevailing party" under the common-law exception. Though there are no decisions explicitly defining the term as it relates to this exception, we find persuasive support from *Reuille v. E.E. Brandenberger Construction, Inc.*, 888 N.E.2d 770 (Ind. 2008). There, we found that the "ordinary meaning" of a "prevailing party" requirement in a contract contemplated a party receiving a favorable judgment on the merits. *Id.* at 771–72. And in *Buckhannon Board*, Justice Scalia joined the majority's opinion "in its entirety" but wrote separately to discuss the historical meaning of "prevailing party" dating back to the founding era. 532 U.S. at 610–11 (Scalia, J., concurring). That concurrence observes that "'[p]revailing party' is not some newfangled legal term"; rather, when used in statutes and under the common law, it "is a term of art" referring to "the party that wins the suit," not "the party that ultimately gets his way." *Id.* at 610, 615. In short, we see no reason to interpret "prevailing party" differently under the common-law exception than we did under the General Recovery Rule.

Given these identical interpretations of the term, we conclude the Defendants cannot recover attorney's fees under either exception—there was never a favorable judgment on the merits due to RRDA voluntarily dismissing its claim. While "a dismissal with prejudice is similar to a judgment on the merits in that it precludes relitigation of the merits," it is "not a judgment in all respects, since it does not resolve issues of law and fact." *Bell v. Commonwealth Land Title Ins. Co.*, 494 N.E.2d 997, 1001 (Ind. Ct. App. 1986), *trans. denied*.

Although the Defendants cannot meet the threshold "prevailing party" requirement under either exception, we pause to explain how the

common-law exception continues to operate in light of its commonalities with the General Recovery Rule.

## B. Despite the broad nature of the statutory General Recovery Rule, the common-law obdurate behavior exception remains in force.

This litigation has spawned questions about the common-law obdurate behavior exception's viability in light of the General Recovery Rule. RRDA contends that, because sanctions for obdurate behavior are now a "**part of**" the statute, the common-law exception no longer exists "distinct from the statutory framework." The Defendants argue that, although the statute codified the common law, it did not abrogate the obdurate behavior exception. We agree with the Defendants.

In two opinions, we observed that the General Recovery Rule's scope is broader than that of the common-law exception. *See Kahn v. Cundiff*, 533 N.E.2d 164, 171 (Ind. Ct. App.), *aff'd & adopted*, 543 N.E.2d 627 (Ind. 1989) (per curiam); *Mitchell*, 695 N.E.2d at 924–25. In *Kahn*, we adopted the panel's comparison of the statute and the common law—that the General Recovery Rule does not require a party to have acted with "an improper motive," whereas the obdurate behavior exception does. 533 N.E.2d at 171. And, in *Mitchell*, we found that a plaintiff could recover attorney's fees for a defendant's obdurate behavior under the General Recovery Rule even though the common-law exception allows a court to sanction only a party that knowingly initiates or continues a baseless suit. 695 N.E.2d at 923–25.

We have also twice acknowledged that the General Recovery Rule "codified" the obdurate behavior exception. *See Loparex*, 964 N.E.2d at 816 n.5; *Town of St. John*, 751 N.E.2d at 659. But this is not to say that the statute abrogated the common law. Rather, "we presume that the legislature is aware of the common law and does not intend to make any change therein beyond what it declares either in express terms or by unmistakable implication." *State Farm Fire & Cas. Co. v. Structo Div., King Seeley Thermos Co.*, 540 N.E.2d 597, 598 (Ind. 1989); *see also Grusin v. Stutz*

*Motor Car Co. of Am.*, 206 Ind. 296, 303, 187 N.E. 382, 385 (1933) (noting that the common law remained "in force" when a statute was "declaratory" of the common law, contained "nothing inconsistent with" the common law, and made no "declarations express or implied" regarding the common law). Here, no such declaration was made.

It's true that we cannot imagine a situation in which the common law would allow for attorney's fees, while the statute would not. Yet, as explained above, that does not mean the statute swallowed the obdurate behavior exception and rendered it nonexistent. Rather, the common law continues to survive. *Cf. Grusin*, 206 Ind. at 303, 187 N.E. at 385.

The trial court thus properly concluded that the General Recovery Rule "did not abrogate" the obdurate behavior exception. But, because the Defendants are not "prevailing parties," the court abused its discretion when it determined that it was permitted to award attorney's fees on those grounds.

We now examine whether a court's inherent authority to sanction parties could permit the trial court's award.

## II. The trial court abused its discretion when it awarded attorney's fees under its inherent authority.

Courts necessarily have inherent, implied power to manage their own affairs. This includes the authority to fashion an appropriate sanction, such as an award of attorney's fees. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 35 (1991).

For reasons discussed below, we find that a court may invoke its inherent power to award attorney's fees at any point in litigation. But, here, the trial court's decision to award attorney's fees was an abuse of its discretion—the record reveals the Defendants did not meet their burden to show that RRDA's actions warranted attorney's fees.

## A. Courts have inherent authority to sanction a party by awarding attorney's fees at any point during litigation.

The legislative and judicial branches of our government are co-equal under Indiana's Constitution. Ind. Const. art. 3, §1. Thus, courts possess inherent powers that "spring, not from legislation, but from the nature and constitution of the tribunals themselves." *Little v. State*, 90 Ind. 338, 339 (1883). These powers include the ability to sanction, without which "no others could . . . be effectively exercised." *Id.* And the legislature cannot deprive courts of this inherent authority, which is not governed by rules or statutes. *See id.* Rather, the court's authority "resides in a state of dormancy until called upon to rectify conduct 'vexatious and oppressive in the extreme.'" *Estate of Kroslack*, 570 N.E.2d at 121 (quoting *Saint Joseph's Coll.*, 158 Ind. App. at 280, 302 N.E.2d at 871). After all, courts must be able to prevent abuse of the legal system. *Id.*

The ability to grant attorney's fees stems from the power to equitably sanction parties. Specifically, a court may award attorney's fees after finding "that a party has acted in bad-faith and such conduct is calculatedly oppressive, obdurate, or obstreperous"—even when no statutory or common-law exception to the American Rule applies. *Id.; see also Montgomery, Zukerman, Davis, Inc. v. Chubb Grp. of Ins. Cos.*, 698 N.E.2d 1251, 1254 (Ind. Ct. App. 1998) (finding inherent authority to award appellate attorney's fees even though no rule authorized such an award), *trans. denied*. In other words, the law does not insulate a party that behaves in extreme bad faith before voluntarily dismissing its complaint.

We now turn to the evidence and the trial court's factual findings and conclusions of law to determine whether its decision to award attorney's fees was an abuse of discretion.

## B. The trial court abused its discretion because the Defendants did not meet their burden to show that RRDA's conduct warranted attorney's fees.

Trial courts have the discretion to award attorney's fees, but that discretion cannot be abused. Before a court can invoke its inherent authority to order such an award, it must conclude that the party "has acted in bad-faith" and that the conduct was "calculatedly oppressive, obdurate, or obstreperous." *Estate of Kroslack*, 570 N.E.2d at 121.

Here, the trial court reached the ultimate conclusion that "RRDA's conduct was in bad faith, obdurate, harassing, and fully supports assessing costs and attorney's fees." In asserting that the decision to award fees was an abuse of discretion, RRDA takes issue with certain factual findings and legal conclusions made in support of this ultimate conclusion.

We first note that the court accepted verbatim the Defendants' proposed findings and conclusions, a practice that "weakens our confidence" that those findings were "the result of considered judgment." *Cook v. Whitsell–Sherman*, 796 N.E.2d 271, 273 n.1 (Ind. 2003). With that in mind, we now address each of RRDA's arguments in turn, taking a close look at the evidence in the record.

### 1. The record fails to show that RRDA knew its lawsuit lacked merit.

First, RRDA argues that the trial court improperly found that "RRDA knew its lawsuit was without merit" to support the ultimate conclusion that RRDA litigated in bad faith. In making the finding, the trial court reasoned that RRDA's "legal attack on the validity of the [p]ermits" was "time barred" because RRDA did not file a petition for judicial review within thirty days of when the billboard permits were ratified. And the court further reasoned that RRDA engaged in a "pattern of negative tactics" by advancing a "meritless" private-nuisance claim.

A suit's claims aren't meritless "merely because a party loses on the merits." *Kahn*, 533 N.E.2d at 171 (citation omitted). Instead, we inquire whether there are no supporting facts. *Id.*

Here, the Defendants failed to show that no facts exist to support RRDA's suit. It's true that RRDA did not petition for judicial review within thirty days of the zoning decision. But RRDA presented, at the very least, a defensible argument that it could challenge the decision as *ultra vires* and void at any time. *Cf. Mies v. Steuben Cty. Bd. of Zoning Appeals*, 970 N.E.2d 251, 258 (Ind. Ct. App. 2012) (holding that a BZA decision exceeding its statutory authority is void and can be collaterally attacked at any time), *trans. denied*. RRDA argued that the billboard permits were void because Utica's town council president lacked the authority to issue them, and the record reveals that RRDA presented some facts in support of this claim. Specifically, Utica's zoning ordinance requires the town building inspector—not the town council president—to issue all permits. And it provides that the Utica BZA must approve all "dynamic signs," including "LED and EVMS signs," such as the ones that Outfront planned to construct. But that approval did not happen because the Utica BZA declined to review the permits' validity, believing it lacked authority to do so.

Further, RRDA also alleged facts in support of its private-nuisance claim. Although RRDA ultimately dismissed that claim, RRDA had asserted that the billboards harmed the Commerce Center's reputation and marketability as well as RRDA's "significant investment" in the Commerce Center and its new entrance.

Given the facts that supported RRDA's claims, it was clearly erroneous for the trial court to find that RRDA knew the suit was meritless. And thus the court's ultimate conclusion on RRDA's bad faith is unsupported by this finding.

## 2. The record fails to show that RRDA "changed its position" about the billboards.

Second, RRDA claims that the trial court improperly found that "RRDA pursued advertising on the Billboards," knew "that Outfront had all permits necessary to construct" them, and then "changed its position." This finding supported the trial court's ultimate conclusion that RRDA acted in bad faith, warranting attorney's fees.

Neither the evidence presented, nor the associated finding, indicates how RRDA's conduct in this regard constituted bad faith. Presumably, the Defendants' concern was that RRDA acted dishonestly by falsely expressing interest in billboard advertising.

True, RRDA did—to some extent—pursue advertising on the billboards. But the record does not show that RRDA agreed that the billboards were properly permitted or that RRDA unequivocally supported their construction. And while RRDA's executive director did meet with Outfront Media after learning of the proposed billboards, he also testified that he was concerned about whether there would be "any restrictions against billboards that might be offensive" and inquired about advertising on them because RRDA wanted to find out "what options might be available" if the billboards were "a done deal." RRDA also maintains that it only later confirmed that the Town had, in fact, issued the permits. Given the lack of clarity of the Defendants' argument, coupled with a lack of evidence supporting it, the trial court's finding on this issue was clearly erroneous—and so it does not support the ultimate bad-faith conclusion.

## 3. The record fails to show that RRDA lacked a basis for naming Watkins personally as a defendant or suggesting the Town's attorney should recuse himself.

Third, RRDA challenges the trial court's findings that RRDA sought to harass or intimidate the Defendants. The trial court found that RRDA

named Watkins personally as a defendant to its declaratory judgment claim, "despite knowing that he acted solely as an employee of Outfront." The court also found that RRDA's request that Utica's attorney withdraw was "unprofessional, not credible" and "part of a strategy to financially intimidate a small town with a small budget." And it used these findings to support its ultimate bad-faith conclusion. The record reveals, however, that the Defendants failed to carry their burden to support the two challenged findings.

Notably, Watkins—not Outfront Media—was individually listed as the applicant for the INDOT billboard permits. And the declaratory judgment statute requires that when "declaratory relief is sought, all persons shall be made parties who have or claim any interest that would be affected by the declaration." I.C. § 34-14-1-11. Because Watkins had an interest that would be affected by a declaration that the billboards were improperly permitted, the record precludes a finding that RRDA named him personally for purposes of harassment. Thus, the trial court's finding on this issue is clearly erroneous.

Likewise, the trial court's finding that RRDA's efforts to disqualify Utica's attorney were unprofessional and not credible is clearly erroneous. While RRDA did send Utica's attorney a letter requesting that he withdraw his representation, RRDA first obtained an opinion from the former executive secretary of the Indiana Disciplinary Commission stating that the representation was a disqualifying conflict of interest. And RRDA never actually moved to disqualify Utica's attorney because the Town first filed a motion asking the court to determine whether its attorney could continue his representation. Given that the Defendants failed to produce evidence to support the two findings, they are clearly erroneous and do not support the trial court's ultimate bad-faith conclusion.

### 4. The record fails to show that RRDA exploited this lawsuit in pursuit of a scenic-byway designation.

Fourth, RRDA challenges the trial court's finding that because RRDA dismissed the lawsuit "the very same day the scenic byway commission

recommended approval of the byway designation," the purpose of the suit "was to buy time for the approval of the scenic byway designation." The court continued, "The timing of the dismissal, with prejudice, is more than coincidental. It is disconcerting." The trial court used this finding to support its ultimate conclusion that RRDA litigated in bad faith. We determine, however, that the finding was clearly erroneous, given the Defendants' failure to produce evidence supporting it.

RRDA understood that Outfront Media would be unable to finish constructing the billboards if the relevant stretch of State Road 265 became a scenic byway. But although RRDA supported the scenic-byway designation, the Louisville–Jefferson County KY–IN Metropolitan Planning Organization initiated the process, which was outside of RRDA's control. And the record does not show that RRDA knew, when it filed its complaint, that the highway would ever become a scenic byway. Rather, the evidence demonstrates that, after discovering that the four remaining billboards would never be built, RRDA made a business decision to dismiss its suit. In other words, RRDA cut costs and moved on. Thus, it was clear error for the trial court to imply that RRDA knew the scenic-byway designation would be approved; and the finding fails to support any resulting conclusion that RRDA's litigation was in bad faith.

### 5. The record fails to show that RRDA brought its "jurisdiction" argument in bad faith.

Finally, RRDA challenges the trial court's conclusion that RRDA acted in bad faith because it "persisted in arguing"—despite contrary precedent—that the court lacked "jurisdiction" to award the Defendants attorney's fees.

The trial court cited *R.L. Turner Corp. v. Town of Brownsburg*, 963 N.E.2d 453, 459–60 (Ind. 2012), as contrary to RRDA's "jurisdiction" argument. And the trial court was correct to do so—that case undercuts the premise of RRDA's argument because the court would have been able to award attorney's fees had the Defendants put forth the necessary evidence.

But even though the trial court correctly determined that RRDA's "jurisdiction" argument lacked merit, it was one issue among many raised in the lawsuit. And further, bringing such an argument does not necessarily show that a party "acted in bad-faith" and that the conduct was "calculatedly oppressive, obdurate, or obstreperous"—conclusions that are required for a court to grant attorney's fees under its inherent authority, *Estate of Kroslack*, 570 N.E.2d at 121. Instead, to reach that bad-faith determination—in regard to a party's presentation of a claim—there must be some evidence that the party affirmatively operated with "furtive design or ill will." *Wagler v. W. Boggs Sewer Dist., Inc.*, 980 N.E.2d 363, 383 (Ind. Ct. App. 2012), *trans. denied*. Here, the Defendants have failed to show that, by raising its "jurisdiction" argument, RRDA's conduct rose to this level. Thus, the trial court's ultimate "bad faith" conclusion is unsupported.

## Conclusion

The common-law obdurate behavior exception and the General Recovery Rule cannot authorize a trial court to award attorney's fees when a party voluntarily dismisses its suit with prejudice. But a court can, at any point in litigation, exercise its inherent authority to sanction a party's bad behavior by shifting fees.

Still, the guardrails of zealous advocacy are set wide, while exceptions to the American Rule are narrow. A party must clear a high hurdle to show that a court could exercise its inherent authority to award attorney's fees. Here, the hurdle was not cleared because the record lacks evidence that RRDA acted outside the boundaries of acceptable advocacy. Therefore, the trial court's findings in this regard were clearly erroneous and its conclusions unsupported. It thus abused its discretion when awarding attorney's fees, and we reverse.

David, Massa, Slaughter, and Goff, JJ., concur.

ATTORNEYS FOR APPELLANT

Anne K. Ricchiuto
Brian J. Paul
Matthew C. Olsen
Emily A. Kile-Maxwell
Faegre Drinker Biddle & Reath LLP
Indianapolis, Indiana

David A. Lewis
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEES OUTFRONT MEDIA, LLC AND
DAVID WATKINS

Bryan H. Babb
Alan S. Townsend
Bradley M. Dick
Bose McKinney & Evans LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEES NO MOORE, INC. AND THE
SCHLOSSER FAMILY LIMITED PARTNERSHIP

Michael M. Maschmeyer
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE TOWN OF UTICA

Daniel E. Moore
Matthew K. Duncan
Jeffersonville, Indiana

ATTORNEY FOR APPELLEE UTICA BOARD OF ZONING APPEALS

Rebecca L. Lockard
Jeffersonville, Indiana

ATTORNEYS FOR AMICUS CURIAE DEFENSE TRIAL COUNSEL OF
INDIANA

Peter H. Pogue
Beth A. Behrens
Schultz & Pogue LLP
Indianapolis, Indiana

Lucy R. Dollens
Quarles & Brady LLP
Indianapolis, Indiana