

FILED

Jul 03 2012, 9:45 am

CLERK
of the supreme court,
court of appeals and
tax court

# FOR PUBLICATION

ATTORNEYS FOR APPELLANTS:

**ROBERT W. EHERENMAN**
Haller & Colvin, P.C.
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE:

**JAMES O. WAANDERS**
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAMES MIES and JANICE MIES, | ) | |
| | ) | |
| Appellants-Petitioners, | ) | |
| | ) | |
| vs. | ) | No. 76A03-1112-PL-564 |
| | ) | |
| STEUBEN COUNTY BOARD OF ZONING APPEALS, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE STEUBEN CIRCUIT COURT
The Honorable Allen N. Wheat, Judge
Cause No. 76C01-1105-PL-234

**July 3, 2012**

**OPINION – FOR PUBLICATION**

**BAKER, Judge**

In this case, the sins of a contractor were imputed to the homeowners of a lake cottage after the contractor failed to obtain the necessary permits for new a deck and stairs. To remedy the situation, the contractor sought a post-construction variance for the newly-constructed deck and stairs because neither complied with a zoning ordinance requiring a twenty-foot lakefront setback. The Board of Zoning Appeals approved the variance for the stairs with the condition that the deck had to be brought into compliance with the twenty-foot setback. The homeowners refused to comply, arguing that the Board lacked statutory authority to impose conditions on the variance, which made the condition void or, in the alternative, that the newly-constructed deck and stairs did not violate the zoning ordinance because it maintained its nonconforming status. We conclude that the newly-constructed deck and stairs lost their nonconforming status under the local zoning laws but that the Board lacked the statutory authority to impose a condition on a variance which rendered their entire decision a legal nullity.

Appellants-petitioners James and Janice Mies (collectively, "the Mieses") appeal the trial court's order reversing the decision of the Steuben County Board of Zoning Appeals (BZA) and remanding the case back to the BZA, after concluding that the BZA's decision granting the Mieses a development standards variance with a void condition was a legal nullity. The Mieses argue that the underlying variance and void condition are severable and that the trial court should have upheld the underlying variance while voiding the condition. Additionally, the Mieses argue that even if the trial court did not

2

err in voiding their variance, it erred by concluding that a deck that was attached to their cottage had lost its status as a nonconforming structure that is exempted from the development standards ordinances.

The BZA cross-appeals, arguing that the trial court elevated form over substance when it concluded that it imposed an unauthorized condition on the Mieses' variance. In the alternative, the BZA contends that the Mieses consented to the condition by not objecting to it.

Concluding that the Mieses did not consent to the unauthorized condition, that the underlying variance is not severable from the void condition, making the BZA's entire decision a legal nullity, and that the Mieses' new deck lost its nonconforming status and is no longer exempted from the zoning ordinances, we affirm the decision of the trial court.

FACTS

A. The Lot Before Improvements

The Mieses are residents of Birmingham, Michigan but own a lot adjacent to Lake Gage in Steuben County. The lot has, at all relevant times, been improved with a cottage. The Mieses' lot drops about twenty feet in elevation over a distance of roughly thirty feet to the lake.

Prior to the construction activities discussed below, the lot was also improved with an L-shaped deck which wrapped along the lakefront side of the cottage and then around a portion of the side of the cottage. The portion of the deck along the lakefront side of

3

the cottage extended northeast from the second floor of the cottage to within nine or ten feet of the lake. The portion of the deck along the side of the cottage had wooden stairs extending from the side of the deck southeast to a landing. The stairs then extended from the landing northeast to the ground near the lake.

## B. Improvements and Repairs

In early 2010, the Mieses noticed that a crack in the foundation of the cottage was worsening because the deck attached to the cottage was slipping towards the lake and putting stress on the foundation of the cottage.

On January 26, 2010, the Mieses obtained an estimate from Travis Kyle of T.K. Construction to repair the foundation and deck. The quote stated that the job included removing the old deck and disposing of it. The total cost for material and labor was $2,900.

On March 4, 2010, before approving the estimate, the Mieses asked Kyle for an updated estimate for rebuilding the deck according to their specifications. On March 25, 2010, Kyle responded with the following quote:

> <u>First I will have to pull permits to build your deck</u>. Once I have done that and the existing deck is torn down when I fix the foundation I will start building the new deck, replicating most of the old deck with a few changes. . . . The stairway and the landing will all be replicated as the original. I had also priced the deck with 5 ¼ decking and 2x6. The price I will give u is with 5 ¼ decking if you want 2x6 it will cost and extra six hundred dollars. I will also be painting and staining the railing and decking.

Appellant's App. p. 212 (emphasis added).

4

On April 12, 2010, the Mieses accepted Kyle's updated estimate to perform the quoted work for $8,950. On April 19, 2010, Kyle applied for a building permit for "rebuilding deck," "deck reconstruction 10' x 26' x 23' x 6'" and "replacing old rotted wood decking only" from the Steuben County Plan Commission and Building Department. Appellant's App. p. 194. The Plan Commission responded "ILP not required – replacing old boards on existing deck." Id. at 195. The Building Department responded, "replace Deck Boards only[,] no change to railing[.] [N]o building permit req." Id. at 195.

Kyle did not apply for or obtain a building permit for the repair of the foundation or replacement of the deck. Kyle "then tore down the deck that was affixed to the house, performed the foundation repair, and then rebuilt the deck, which was smaller than the original deck." Appellant's App. p. 202. The new deck extends from the second floor of the front of the cottage to within fifteen feet of the lake, and the new stairs extend from the side of that deck to within two feet of the lake.

C. Initial Decisions of the Plan Commission, Plan Director, and BZA

On May 6, 2010, a "stop work order" was issued by the Plan Commission to the Mieses for violating the Steuben County Zoning Ordinance (SCZO). Appellant's App. p. 253. Specifically:

> In April 2010, an agent for the applicants came to the Plan Commission Office and Building Department to discuss permitting requirements for a deck project. At that time, the project was presented as limited repair to the existing deck structure. The deck was considered to be legally nonconforming because it extended into the required lakefront setback.

5

> The zoning ordinance allows for regular maintenance and repairs to existing, non-conforming structures as long as the value of the work does not exceed 50% of the value of the structure in any given year.
>
> An investigation by code enforcement staff determined that the nonconforming deck structure had been completely removed and replaced with a new deck structure, without permits and within the required lakefront setback. A stop work order was issued by the Plan Commission Office for violations of the Steuben County Zoning Ordinance on May 6, 2010.

Appellant's App. p. 253 (emphases added).

On July 7, 2010, Kyle applied for a "post construction" building permit for a "Deck/Stairway" from the Plan Commission and Building Department. Appellant's App. p. 280. Kyle was advised that the new deck and new stairs would now have to comply with the SCZO's twenty-foot lakefront setback requirement. Kyle was also advised that he could apply on behalf of the Mieses for a variance from the SCZO's twenty-foot lakefront setback requirement with the BZA.

On July 8, 2010, Kyle also submitted on behalf of the Mieses a "Dimensional Variance Application Form" to the BZA describing the nature and size of the existing improvements as "24' x 24' L-shaped deck and stairs from deck to ground" and requesting a single variance for "2' lakefront setback for stairs R/T 20'." Appellant's App. p. 260. The BZA assigned the application Petition No. V-10-47. Id. It is undisputed that the new deck extends five feet into the twenty-foot setback area, and the new stairs extend eighteen feet into the twenty-foot setback area.

6

The BZA scheduled and issued a notice of hearing on the application for August 9, 2010, stating the "purpose of the application is as follows:  (V-10-47) James & Janice Mies petition for one-post construction, developmental-standard variance for a deck. Variance is for lakefront setback of two (2) feet rather than the twenty (20) feet required." Appellant's App. p. 136 (emphasis in original).

On August 9, 2010, the BZA held its hearing on the Mieses' Petition No. V-10-47. At the hearing, Kyle testified on behalf of the Mieses that he knew he should have obtained a permit for the new deck and stairs but that he did not do so because he "was swamped" and because the Mieses wanted the new deck and stairs for a "family reunion get together."[1]  Appellant's App. p. 182.  Kyle also testified that he realized that he had "put on a completely new deck."  Id. at 183.

During the hearing, a member of the BZA asked whether the BZA had to say "yes or no to the whole thing" or whether the BZA could "say this has to happen to the deck and this has to happen to the stairs?"  Appellant's App. p. 185.  The BZA and Kyle discussed at length whether the new deck could be shortened to meet the SCZO's twenty-foot setback requirement, while maintaining the stairs.  Kyle conceded that it could be done.  More particularly, the following colloquy occurred between the BZA and Kyle:

> [BZA]  Basically, what I have heard is we did not have enough time to get the variance because we wanted to have a party, I was too busy to come up and get the stuff.  I haven't heard, I haven't heard a hardship.  Would you

---

[1] According to the BZA, because of the quality of the audio recording of the hearing, the transcript of the hearing is not entirely complete.  The notice of the hearing indicates that the BZA's hearings are broadcast live and recorded for later viewing on the internet.  Appellant's App. p. 137.

identify a hardship that is associated with this?  In order to get, in order to get a variance you have [to] identify a hardship.

[Kyle]  As far as, they want to be able to use their home.  They have had no place to have any get together whatsoever, you know, out on that whole property because the top side of the property I mean up the road [ . . . ]

[BZA]  We visited the property[?]

[Kyle]  Yeah.  There is, I mean there is no place to sit, congregate, talk, I mean they have no place, no other way to get to that French door, which their back door they actually had to walk through the house to get down to the second story.  _____  actually the stair system they had to walk clear out to the front, walk around inside the house and come down, and I mean it is actually quicker to be in the house and almost run down to the deck and come in through the French doors than what it is actually, you know, going through the top side.

[BZA]  I think what he is saying is that it is the contour of the lot.

***

[Kyle]  Yeah.  But like I said, you know, we could cut it back as far as, you know, come back to the line there, but it would be so much, you know, it would be so tight through there that it actually would be kind of awkward to walk around there and I mean as far as working on the front side of the house it would be a hardship also because, I mean they want me to paint their house for them, all their soffits and everything and there is no way to set an extension ladder up on the front side of the house unless the deck is actually there to set your extension ladder up on because the slop[e] is actually right there at that line almost where the header was at.  I am like two feet back from where it is just like a straight drop down to the lake.  I mean there would be no way to get any ladder, scaffold system or anything out there to even work on it.

[BZA]  And you should have had this discussion before you build the deck.

[Kyle]  Un uh.  Yeah I understand that.

[BZA]  A, personally, I mean I have got no problem with the stairs.  I understand the problem of getting down a steep hill to get to the lake front

8

and there is quite a few properties along that South Lake Gage Drive that had that problem. A, but I just can't for the life of me see why we should allow this deck to go beyond the 20 foot setback. Particularly, now – maybe before, but not now. I don't think there is a real hardship.

Appellant's App. p. 188-90.

The BZA proceeded to vote on Petition V-10-47. The voting forms described the variance request as a "post-construction lakefront setback of two (2) feet rather than the twenty (20) feet required for a deck." Appellant's App. p. 244. The BZA concluded that all requirements for a dimensional variance had been met with respect to the stairs. That said, the BZA checked the box "Approved with Conditions" on the voting form. Id. The BZA noted that a two-foot setback was permitted for the stairs as they had been constructed with the "[r]est to be in compliance." Id.

No appeal was taken from the BZA's August 9, 2010 action on Petition V-10-47. However, the Mieses and Kyle took no steps to bring the new deck into compliance with the SCZO or the variance approved by the BZA.

### D. Enforcement Actions of the Plan Commission and Plan Director

On December 7, 2010, enforcement officers for the Plan Commission issued a Notice of Violation (NOV) to the Mieses, indicating that the deck had been constructed without an Improvement Location Permit (ILP) and that although the BZA had approved a variance, "the variance came with conditions," namely, "that the deck had to be brought into compliance" with the twenty-foot setback requirement and that "[n]o one has

9

obtained a permit so that the deck can be brought into compliance." Appellant's App. p. 287.

On January 6, 2011, the Mieses, through legal counsel, responded to the NOV by letter to the Steuben County Plan Director. In this letter, the Mieses argued that the improvements to their nonconforming deck are not in violation of the SCZO. Additionally, the Mieses maintained that the BZA had no statutory authority to impose conditions on the variance and, consequently, the only enforceable provision of the variance is the two-foot setback for the stairs. The Mieses agreed to obtain any necessary permits and to pay all filing fees but emphasized that all such permits should be issued because their deck does not violate the SCZO.

On February 7, 2011, the Plan Director responded to the Mieses by rejecting the various arguments set out in their January 6, 2011 letter. More particularly, the Plan Director responded that once the "deck was completely removed from the property, and a new deck was built in its place . . . the non-conformity cannot be later re-established. Appellant's App. p. 276-77. The Plan Director also conceded that while the enabling act did not expressly grant authority to the BZA to impose conditions on a variance, "we believe imposition of conditions is a necessary action of local government to carry out its duties, namely granting relief from standards of the SCZO while still protecting the health, safety, and welfare of the applicants, surrounding properties, and the community." Id. at 277. The Plan Director also highlighted the fact that the agent for the Mieses was allowed to speak and although "the agent did not expressly agree to the conditions, he did

10

not object to them. Rather, he asked what he would need to do in order to comply with the conditions." Id. The Plan Director invited the Mieses to appear before the BZA to have the conditions of their variance amended. In addition, the letter informed the Mieses that they may appeal the decision within ten days and that the Plan Commission would suspend action as they worked towards a resolution.

### E. Appeal to the BZA

On March 1, 2011, the Mieses appealed to the BZA the decision that their deck does not comply with the SCZO and the determination that once a nonconforming deck is removed, it cannot be reestablished. The BZA assigned this appeal Petition No. AP-11-01. A hearing on Petition AP-11-01 was scheduled for April 11, 2011.

Also on March 1, 2011, the Mieses appealed "to <u>amend conditions of an approved developmental-standard variance for a deck</u>. Conditions are that the reduced lakefront setback is for steps only." Appellant's App. p. 257 (emphasis in original). The BZA assigned this appeal Petition No. V-10-47. A hearing on Petition V-10-47 was also scheduled for April 11, 2011.

At the April 11, 2011 hearing, the BZA heard arguments from the Mieses' legal counsel on AP-11-01 and V-10-47. With respect to AP-11-01, which was described on the voting form as "[o]verturn a notice of violation that a deck does not comply with the zoning ordinance & a zoning determination that a non-conforming deck, once removed, cannot be re-established," the BZA affirmed the decisions of the Plan Director.

11

Appellant's App. p. 20-25. Regarding Petition V-10-47, the BZA voted to reject the petition to amend the conditions on the variance.

## F. Appeal to the Trial Court

On May 10, 2011, the Mieses filed a verified petition for writ of certiorari to the trial court with respect to the three appeals that were before the BZA at the April 11, 2011 hearing. On that same day, the trial court issued an order to show cause, and on June 13, 2011, the trial court issued the writ of certiorari.

On October 2, 2011, the Mieses filed a motion for summary judgment, and on November 3, 2011, the BZA filed its response. On November 9, 2011, the trial court entered its order, and after setting forth findings of fact and conclusions of law, entered the following decree:

1. The decision of the BZA entered on August 9, 2010, is reversed.

2. This case is remanded to the BZA to conduct a new hearing upon the development standards variance requested by Mies.

3. At the conclusion of the hearing, each board member shall cast their vote either "granting" or "denying" the development standards variance requested by Mies without conditions being attached thereto.

Appellant's App. p. 13. The Mieses now appeal.

## DISCUSSION AND DECISION

### I. Standard of Review

The Mieses argue that the trial court erred when it reversed the BZA's April 9, 2010 decision, rather than reversing the BZA's April 11, 2011 decision, upholding the

12

NOV, which sought to enforce the condition that had been placed on the variance. More particularly, the Mieses contend that the trial court exceeded its jurisdiction by reversing the BZA's decision, granting their variance. In other words, the Mieses argue that the condition on the variance should be voided without voiding the entire variance.

When a court reviews a decision made by a BZA, it must determine whether the decision is:

> "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance or procedure required by law; or (5) unsupported by substantial evidence."

Equicor Dev., Inc. v. Westfield-Washington Twp. Plan Comm'n, 758 N.E.2d 34, 36 (Ind. 2001) (quoting Ind. Code § 4-21.5-5-14).

When reviewing a decision of a BZA, this Court is bound by the same standard of review as the trial court. S & S Enterprises, Inc. v. Marion Cnty. Bd. of Zoning Appeals, 788 N.E.2d 485, 489 (Ind. Ct. App. 2003). In reviewing an administrative decision, the trial court may not try facts de novo or substitute its own judgment for that of the agency. Id. at 490. Likewise, the reviewing court will neither reweigh the evidence nor reassess the credibility of witnesses. Id.

This Court has previously recognized that the "powers of the BZA are strictly limited to those granted by its authorizing statute." Schlehuser v. City of Seymour, 674 N.E.2d 1009, 1014 (Ind. Ct. App. 1996). When the BZA takes action that exceeds those powers, those actions are ultra vires and void. Id. A void action is subject to collateral

attack at any time. <u>Elkhart Cnty. Bd. of Zoning Appeals v. Earthmovers, Inc.</u>, 631 N.E.2d 927, 929 (Ind. Ct. App. 1994). And while Indiana Code sections 36-7-4-918.2 and -918.4 expressly authorize the BZA to impose reasonable conditions when it approves certain use variances, on August 9, 2010, when the BZA approved the Mieses' development standards variance for a two-foot lakefront setback, Indiana Code section 36-7-4-918.5 (2002), <u>amended</u> <u>by</u> P.L. 126-2011,[2] did not give the BZA the authority to impose any conditions on a development standards variance. Indiana Code section 36-7-4-918.5 provides, in relevant part, that a "board of zoning appeals shall approve or deny variances from the development standards (such as height, bulk, or area) of the zoning ordinance."

## II. Appellee's Arguments: Substance of the Variance and Consent

As an initial matter, the BZA contends that the trial court considered the form rather than the substance of the BZA's variance in determining that it contained an unauthorized condition. In the alternative, the BZA argues that the Mieses consented to the condition imposed on the variance and have waived their argument that the approval of the variance with the condition was invalid.

## A. Substance of the Variance

The BZA maintains that the trial court erred by "by improperly imposing an overly rigid and technical requirement on the specific form of the language which the BZA was permitted to use to grant a valid variance." Appellee's Br. p. 25.

---

[2] In 2011, the General Assembly amended Indiana Code section 36-7-4-918.5 to enable the BZA to impose reasonable conditions as part of a development standards variance.

14

Here, the BZA's voting form from the August 9, 2010 hearing described the variance request as "a post-construction lakefront setback of two (2) feet rather than the twenty (20) feet required." Appellant's App. p. 44. The voting form states that the variance has been "Approved with Conditions," namely, a "2' setback for the stairs as constructed, rest of structure must be brought into compliance." Id. At the August 9, 2010 hearing, the BZA described the Mieses' request as a "standard variance for a deck." Appellant's App. p. 181. Indeed, a substantial portion of the entire hearing was devoted to a discussion of the variance as it applied to the deck.

Even after the December 2010 NOV was issued, the BZA continued to describe the Mieses' initial variance request as one for "a post-construction lakefront setback of two (2) feet rather than twenty (20) feet required for a deck." Appellant's App. p. 253. Furthermore, in the notice of the April 11, 2011 hearing on the Mieses' appeal of the NOV, the outcome of the August 9, 2010 hearing was described as: "The Board of Zoning Appeals granted the variance with the condition that the reduced lakefront setback is for the attached steps only and that the remainder of the deck must meet the minimum lakefront setback of 20 feet from the water." Id. Under these facts and circumstances, we cannot say that the trial court erred when it determined that the BZA imposed an unauthorized condition on Mieses' variance, which it was not specifically authorized to do by statute on August 9, 2010.

15

## B. Consent

In the alternative, the BZA contends that the Mieses were barred from challenging the condition because they "consented to the conditions imposed on the variance at the August 9, 2010 hearing." Appellee's Br. p. 26. Specifically, the BZA points out that at the August 9, 2010 hearing, Kyle neither expressly agreed to the conditions nor objected to them. Appellant's App. p. 187-90.

In support of its argument, the BZA directs us to Robert Lynn Co., Inc. v. Town of Clarksville Board. of Zoning Appeals, 867 N.E.2d 660 (Ind. Ct. App. 2007). In Robert Lynn Co., the trial court concluded that the BZA did not approve Lynn's application for a variance because the BZA conditioned its approval on future events of the Plan Commission, which failed to comply with the applicable statute and was characterized as no approval at all. Id. at 671. However, a panel of this Court determined that because both Lynn and the BZA "specifically agreed to the condition at issue – in other words, the BZA did not unilaterally impose the condition – and no one appealed the condition within thirty days" that under "these unique circumstances," the approval and condition were valid. Id.

The Mieses distinguish Robert Lynn Co., by highlighting the fact that "there was no evidence of any written agreement by the Mies[es] to the condition imposed by the BZA. . . ." Reply Br. p. 9. As discussed below, although we do find Robert Lynn Co. distinguishable from the instant case, we do not agree with the Mieses' proffered distinction. Specifically, while we make no comment as to any claims that the Mieses

16

may have against Kyle and T.K. Construction, we point out that the sins of the contractor are imputed to the owner. Indeed, Kyle's failure to obtain the necessary permits was imputed to the Mieses.

Instead, we find Robert Lynn Co. distinguishable from the instant case because neither Kyle nor the Mieses expressly agreed to the condition imposed by the BZA. Consequently, the "unique circumstances" that existed in Robert Lynn Co. do not exist in this case, and we cannot agree that the Mieses agreed to the condition imposed by the BZA.

### III. Void Condition Severable from Variance

The Mieses argue that the void condition attached to the August 9, 2010 variance did not render the variance a complete nullity. The BZA counters that the trial court, "having determined that the BZA had in substance only approved a variance for the stairs, properly abstained from rewriting the variance by voiding only the 'conditions' of the variance." Appellee's Br. p. 30.

At the outset, we note that the Mieses contend that the trial court exceeded its jurisdiction by reversing the August 9, 2010 decision, inasmuch as they did not challenge the BZA's August 9, 2010 findings, and any error related to those findings are, therefore, waived. Thus, the Mieses simultaneously argue that the condition was subject to review because they appealed the December 2010 NOV in a timely manner but that the approval of the variance was not subject to review because they failed to appeal the August 9, 2010 variance within thirty days.

17

Regarding the variance, the Mieses concede that they did not apply for two variances because the "stairs and the rebuilt deck were not separate structures: the stairs and [the] deck were attached to each other, with the stairs extending further toward the lake than the deck." Appellant's Br. p. 18. On March 1, 2011, the Mieses appealed to amend the conditions of the variance. Appellant's App. p. 257. The BZA voted to reject their petition on April 11, 2011, and the Mieses filed a verified petition for writ of certiorari with the trial court seeking a review of this decision. Under these unique facts in which the subject of the variance and the subject of the condition are intertwined; indeed, they are one structure, we cannot agree that the variance was not subject to review by the Mieses' appeal to amend the conditions of that variance.

Moving forward, the Mieses rely on Elkhart County Board of Zoning Appeals v. Earthmovers, Inc., 631 N.E.2d 927 (Ind. Ct. App. 1994), in support of their position that conditions on variances should be considered independently from the underlying variance. In Earthmovers, the BZA had granted a special use permit for the operation of a landfill to be operated by Earthmovers. Id. at 929. The BZA attached a condition to the permit that the landfill had to be a private landfill operated only by Earthmovers and its affiliates (Condition 12). Id.

Several years later, after Earthmovers had purchased the property, Earthmovers applied to the BZA for a modification of its special use permit to remove Condition 12. Id. Earthmovers argued that Condition 12 was void because it regulated the persons using the land rather than the land use. Id. After a public hearing, the BZA denied

18

Earthmovers's request, concluding that Condition 12 was not void and that the only reason for a change that had been proven by the evidence was economic in nature. Id. Earthmovers appealed, and the trial court reversed, concluding that Condition 12 was void because it related only to the person using the land, and was, therefore, not within the powers granted to the BZA. Id.

The BZA appealed, and a panel of this Court determined that Condition 12 was not void, inasmuch as "Earthmovers [] failed to show that Condition 12 was not intended to regulate traffic around the landfill," and the record provided support that Condition 12 was imposed to regulate traffic. Id. at 931. "Only in the absence of such evidence may the BZA's decision be reversed." Id.

Nevertheless, the Earthmovers Court found that Condition 12 was voidable, insofar as it was defective for its specificity in naming Earthmovers. Id. at 932. The panel noted that "such specificity makes it impossible that subsequent owners of the land may enjoy the special use permit without going before the BZA to have inserted into Condition 12 the name of the entity who will be taking over operation of the landfill." Id. The panel concluded that because Condition 12 was voidable, Earthmovers waived error in its imposition by failing to appeal the condition in a timely manner. Id.

Earthmovers is distinguishable from this case. As discussed above, it makes little sense to consider the void condition separately from the underlying variance or to require that the condition be severed from the underlying variance when the subjects of both are one structure. Moreover and perhaps most compelling, to sever the void condition from

19

the underlying variance would require this Court to substitute its judgment for the judgment of the BZA in determining the scope of the development standards variance. As stated above, at the August 9, 2010 hearing, the BZA imposed the underlying variance and the void condition on one voting form; indeed, by checking one box labeled "Approved with Conditions." Appellant's App. p. 244. Consequently, under these circumstances, where the condition reflects the variance as the BZA approved it, rather than some collateral matter, the condition should not be separated from the variance, and the trial court did not err in reversing and remanding the BZA's August 9, 2010 decision.

In a related argument, the Mieses maintain that the BZA is without authority to revoke a variance that has been granted because there is no statute or ordinance granting it such authority. Therefore, the only option is to sever the void condition from the underlying variance.

In support of this argument, the Mieses direct us to Schlehuser v. City of Seymour, 674 N.E.2d 1009 (Ind. Ct. App. 1996). In Schlehuser, a panel of this Court considered the BZA's authority to reconsider and revoke an existing use variance. Id. at 1011. The trial court had concluded that the BZA had such authority even in the absence of an express grant through statute or ordinance. Id. at 1013. The panel of this Court disagreed, noting that "[w]hile the City of Seymour has broad power as a 'unit,' including the residual power to revoke an existing variance under proper circumstances, the municipality must delegate that power to the BZA in an ordinance." Id. The panel determined that the BZA had the authority to revoke variances if they were subject to

20

reasonable and clearly stated conditions and if those conditions were not met. Id. at 1014. Because there was no transcript of the BZA's proceedings, the panel remanded the case to review the actions of the BZA to determine whether the variances were issued subject to conditions and whether Schlehuser failed to comply with those conditions. Id.

Schlehuser is also distinguishable from the instant case, inasmuch as Schlehuser involved variances that had been properly granted in the first instance. Here, on one voting form, the BZA granted a variance subject to a void condition, making the entire act ultra vires and void. Put another way, the BZA's August 9, 2010 decision "is contrary to law, void and of no force and effect. . . . It is to be considered for what it is – a complete legal nullity." Appellant's App. p. 12. Therefore, there is no variance to revoke, insofar as the BZA's August 9, 2010 decision is a legal nullity.

### IV. SCZO's Nonconforming Use Provisions

The Mieses argue that even if the trial court did not err in remanding the variance back to the BZA for reconsideration, they do not need to comply with the SCZO's twenty-foot setback because they did not lose their vested rights under the SCZO's nonconforming use provisions. More particularly, the Mieses contend that the cottage and the deck are a single structure and that the value of that structure was $27,500, while the total cost of repairs was $8,950, which is well below the fifty percent threshold that repairs must exceed before the structure loses its nonconforming status under the SCZO.

The interpretation of a zoning ordinance is a question of law that is reviewed de novo. Story Bed & Breakfast, LLP v. Brown Cnty. Area Plan Comm'n, 819 N.E.2d 55,

21

65 (Ind. 2004). Zoning regulations that inhibit the use of real property are in derogation of the common law and are strictly construed. Flying J., Inc. v. City of New Haven Bd. of Zoning Appeals, 855 N.E.2d 1035, 1039 (Ind. Ct. App. 2006). The courts construe a zoning ordinance to favor the free use of land and will not extend restrictions by implication. Id.

> Chapter 22, Section 22.02 of the SCZO provides:
>
> Structures and buildings that are existing and lawful on the effective date of this Ordinance or amendments thereto, may be continued even though the structure or building does not conform with the dimensional or other provisions of this Ordinance, subject to the following provisions of this section.

Appellant's App. p. 7-8.

> Section 22.02(f) provides:
>
> Repairs, improvements, or modernization of non-conforming structures and buildings shall be permitted provided the repairs or improvements do not exceed fifty percent (50%) of the value of the building or structure during any period of twelve (12) months.

Appellant's App. p. 8. And Chapter 24 defines a "Structure" as:

> Anything constructed or erected, the use of which requires location on ground or attachment to something having location on the ground. Structures include, but are not limited to, principal and accessory buildings, radio, television and cellular phone towers, decks, fences, privacy screens, walls, antennae, swimming pools, signs, gas or liquid storage facility, manufactured homes, prefabricated buildings, street directional or street name sign and billboards. The term also includes recreational vehicles to be installed on a site for more than 180 days.

Appellant's App. p. 8 (emphasis added).

Here, it is undisputed that the Mieses' old deck was a nonconforming structure. Additionally, a deck is defined as a "Structure" in Chapter 24 of the SCZO, even if it is attached to a building such as the Mieses' lake cottage. And Section 22.02(f) allows for repairs of nonconforming structures and buildings as long as the cost of the repairs does not exceed "50% of the value of the building or structure." Because the deck is specifically defined as a structure under the SCZO, the cost of the repairs could not exceed fifty percent of the value of the deck.

The total cost of replacing the Mieses' deck was $8,950. While the Mieses point out that the County Assessor had not assigned a separate value to the old deck for property tax purposes, we cannot say it was error to conclude that the cost of replacing the old deck exceeded fifty percent of its value. Accordingly, the new deck and stairs lost their nonconforming status under Section 22.02 of the SCZO, and this argument fails. Therefore, we affirm the trial court's order reversing the BZA's August 9, 2010 decision and remanding the case back to the BZA to conduct a new hearing on the post-construction development standards variance requested by the Mieses.

The judgment of the trial court is affirmed.

KIRSCH, J., and BROWN, J., concur.