FILED

Dec 07 2023, 8:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Charles E. McFarland
New Castle, Kentucky

Michael A. Gillenwater
Jeffersonville, Indiana

ATTORNEY FOR APPELLEE

R. Patrick Magrath
Alcorn Sage Schwartz &
Magrath, LLP
Madison, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Joseph Chapo, Sherry Chapo,
and Deputy Big Shot, LLC,

*Appellants-Defendants,*

v.

Jefferson County
Plan Commission,

*Appellee-Plaintiff*

December 7, 2023

Court of Appeals Case No.
23A-CT-467

Appeal from the Jefferson Circuit
Court

The Honorable Sally A.
McLaughlin, Judge

Trial Court Cause No.
39C01-1605-CT-380

**Opinion by Judge Weissmann**
Judges Riley and Bradford concur.

**Weissmann, Judge.**

[1]     In 2012, Joseph and Sherry Chapo sought from the Jefferson County Board of Zoning Appeals (BZA) a conditional use permit to sell guns and operate a future shooting range on the Chapos' agriculturally zoned property. The BZA approved the sale of guns but denied the Chapos' request to operate a range. Rather than appealing this decision, they proceeded to operate the shooting range through their company, Deputy Big Shot, LLC, without the necessary permit.

[2]     A decade-long court battle ensued between local zoning officials and the Chapos and Deputy Big Shot, LLC (collectively, the Chapos). Ultimately, the trial court entered a permanent injunction requiring the Chapos to remove the unauthorized commercial shooting range. The court also fined the Chapos more than $200,000, ordered them to pay the BZA's attorney fees, and authorized county officials to enforce its order if the Chapos did not comply within 90 days.

[3]     On appeal, the Chapos contend the trial court's judgment is improper because the BZA lacked authority in 2012 to deny the conditional use permit. The Chapos also challenge the sanctions imposed by the trial court. We affirm, concluding that the Chapos are barred from challenging the BZA's 2012 decision that they did not appeal. We also conclude the sanctions were proper.

## Facts

The Chapos have owned 100 acres in Deputy, Indiana, since 1991. The property is subject to the Jefferson County Zoning Ordinance (Zoning Ordinance).

In September 2012, the Chapos applied for a conditional use permit to operate "in the future an Indoor/Outdoor tactical and test firing range to be marketed to professional marksmen, law enforcement and light military forces in the region." Appellee's App. Vol. III, p. 243. They also sought permission to manufacture and sell firearms on their property. While those applications were pending, the Chapos incorporated their solely owned business as Deputy Big Shot, LLC.

Within a few months, the BZA approved the Chapos' request to manufacture and sell firearms but denied the conditional use permit needed to operate the shooting range. Despite this denial, the Chapos later operated a shooting range on the property.

In April 2016, for instance, the Chapos began advertising for future tactical test firing range events on their property. They announced the Deputy Big Shot "Grand Opening" in April 2016 and both advertised and conducted beginner pistol classes on their property starting in May 2016. Appellee's App. Vol. IV, pp. 7-8.

The Chapos' advertisements and a citizen complaint prompted the Jefferson County Zoning Enforcement Officer (Enforcement Officer) to twice order the

couple in April 2016 to cease operating a tactical test firing range on their property. When the Chapos failed to comply, the Jefferson County Plan Commission (Commission) filed in May 2016 a *Complaint for Injunction and Damages* alleging the Chapos were violating the Zoning Ordinance. The Commission amended its complaint to include Deputy Big Shot, LLC, as a defendant.

[9] The trial court in January 2017 granted a preliminary injunction barring the Chapos from operating a shooting range on their property. The Chapos filed an interlocutory appeal later that month. Meanwhile, the Chapos continued to operate the shooting range, conducting a "Target Discrimination" event in January 2017, an "Advanced Movement and Shooting Event" in February 2017, a "3 Gun Run" competition in June and July 2017, and an "Independence Day Machine Gun Shoot" and a "Bill of Rights Woods Walk" in July 2017. *Id.* at 8, 35, 37-40, 43-52, 101, 106-7, 110, 112.

[10] While that appeal was pending, the trial court in October 2017 found the Chapos in contempt for continuing to operate the shooting range in violation of the preliminary injunction. In May 2018, this Court affirmed the preliminary injunction. *Chapo v. Jefferson Cty. Plan Com'n*, No. 39A05-1612-CT-2840, *13-14 (Ind. Ct. App. 2018) (mem.), *reh. denied, trans. denied*.

[11] The Chapos later moved under Indiana Trial Rule 60(B) for relief from the preliminary injunction and contempt findings. The motion alleged those rulings were void because the Commission lacked standing to bring the suit. The

motion also alleged the Commission's members had not filed oaths as statutorily required and that their offices therefore were considered vacant. The trial court denied the 60(B) motion, and the Chapos appealed again. This Court affirmed. *Chapo v. Jefferson Cty. Plan Com'n*, 164 N.E.3d 131 (Ind. Ct. App. 2021), *reh. denied*, *trans. denied*, *cert. denied*, 142 S.Ct. 429 (2021).

[12] Meanwhile, the Chapos had moved for summary judgment in the trial court, which, instead, granted summary judgment to the Commission. Finding the Chapos had violated a lawful zoning ordinance by initiating and operating the shooting range on their property, the court ordered:

> The Chapos are hereby enjoined from further violation of the Jefferson County Zoning Ordinance and are permanently enjoined from operating a shooting range/tactical and test firing range at the property and shall not allow any other individual or entity to operate a shooting range/tactical and test firing range at the property . . . .
>
> The Chapos shall remedy and abate all violations of the Jefferson County Zoning Ordinance occurring on the property within ninety (90) days of this Order by demolishing and/or destroying any and all buildings, facilities or improvements of land associated with the shooting range/tactical and test firing range at the property and/or the allowance of any other individual or entity to operate a shooting range/tactical and test firing range at the property.
>
> If the Chapos fail to remedy and abate all violations of the Jefferson County Zoning Ordinance occurring on the property within ninety (90) days of this Order, the [Commission] or any other entity or third party designated by Jefferson County[] is authorized to enter upon the property to remedy and abate the violations . . . .

> The [Chapos] are fined the sum of $209,625.00, which is 15% of the $1,397,500.00 potential fine that could be imposed . . . .
>
> In addition, the Plaintiff[s] are awarded costs which include $27,490.78 in attorney fees . . . plus court costs . . . .

Appellants' App. Vol. II, pp. 44-45. The Chapos appeal that judgment.[1]

## Discussion and Decision

[13]  The Chapos raise a number of often overlapping issues, which we restate as:

  I.  Whether the Chapos are barred from challenging the Commission's denial of the conditional use permit in 2012.

  II.  Whether the trial court erred in: (1) ordering that county officials could enter the Chapos' property to remedy the ordinance violations; (2) fining the Chapos $209,625; and (3) requiring the Chapos to pay the Commission's attorney fees of $27,490.78.

[14]  When reviewing a trial court's entry of summary judgment, we apply the same standard as the trial court. *Johnson v. Harris*, 176 N.E.3d 252, 255 (Ind. Ct. App. 2021). The moving party bears the burden of showing that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. *Fox v. Barker*, 170 N.E.3d 662, 665 (Ind. Ct. App. 2021). Summary judgment is

---

[1] We note that Appellants' Brief contains numerous legal and factual assertions that lack supporting citations to authority or to the record on appeal. Although a party may waive appellate claims based on such omissions, *see Holland v. Trs. of Ind. Univ.*, 171 684, 688 n.3 (Ind. Ct. App. 2021), *reh. denied*, we have been able to discern most of the Chapos' appellate arguments and therefore address them. *See In re D.J.*, 68 N.E.3d 574, 580 (Ind. 2017) (noting the preference for deciding cases on their merits).

improper if the moving party fails to meet that burden or, if it does, the nonmoving party establishes a genuine issue of material fact. *Id.* We construe all factual inferences for the nonmoving party and all doubts as to the existence of a material fact against the moving party. *Id.* at 656-66.

## I. The Board of Zoning Appeals' 2012 Decision is not Void

[15] The Chapos' various attacks on the permanent injunction rest on one common proposition: that the BZA's 2012 decision denying their application for a conditional use permit was invalid. The Chapos contend their failure to appeal that decision does not prevent them from challenging it here.

[16] An appeal taken under Indiana Code § 36-7-4-1600 to -1699 "establishes the exclusive means for judicial review of zoning decisions . . . made by a board of zoning appeals." Ind. Code § 36-7-4-1601. Indiana Code § 36-7-4-1604 provides that "[a] person who fails to timely object to a zoning decision . . . within the period prescribed . . . waives the person's right to judicial review under this chapter." Thus, a party's failure to appeal a zoning decision normally prevents that party from later challenging it.

[17] But the Chapos claim these statutes do not preclude their collateral attack because the BZA's 2012 decision is void. "A collateral attack is 'a judicial proceeding pursued to avoid, defeat, evade or deny the validity and effect of a valid judgment or decree.'" *Earl v. State Farm Mut. Auto. Ins.,* 91 N.E.3d 1066, 1071-72 (Ind. Ct. App. 2018) (quoting *In re Chapman*, 466 N.E.2d 777, 780 (Ind. Ct. App. 1984)).

In arguing that the BZA's 2012 decision is void and subject to collateral attack, the Chapos correctly observe that "the 'powers of the BZA are strictly limited to those granted by its authorizing statute.'" *Mies v. Steuben Cty. Bd. of Zoning Appeals*, 970 N.E.2d 251, 258 (Ind. Ct. App. 2012) (citing *Schlehuser v. City of Seymour*, 674 N.E.2d 1009, 1014 (Ind. Ct. App. 1996)). Any action by the BZA that exceeds those powers is ultra vires and void. *Id.* As the Chapos emphasize, "[a] void action is subject to collateral attack at any time." *Id.*

The Chapos' claim that the BZA's decision was ultra vires is two-pronged. First, they assert the Indiana Shooting Range Protection Act (ISRPA) prohibited the BZA's denial of the conditional use permit. Second, they argue that the BZA lacked legal authority to deny the conditional use permit because: (1) the Zoning Ordinance did not limit shooting ranges; (2) given the lack of any zoning limitations, the BZA therefore violated the Second Amendment to the United States Constitution by requiring the Chapos to obtain a conditional use permit before operating the shooting range; and (3) the BZA and Commission members failed to take their oath and were thus not members entitled to vote on the conditional use permit.

## A. Indiana Shooting Range Protection Act is Inapplicable

The trial court found the ISRPA does not apply to the shooting range on the Chapos' property and thus did not void the BZA's denial of the condition use permit in 2012. On appeal, the Chapos argue that their shooting range fell within the "safe harbor" provisions in the ISRPA applicable to shooting ranges

in operation before July 1, 1996. They also assert the ISRPA's provision limiting liability for noise-related actions applies here.

[21] When interpreting an ordinance, this Court "will employ the same principles as those employed for the construction of statutes." *Wastewater One, LLC v. Floyd Cty. Bd. of Zoning Appeals*, 947 N.E.2d 1040, 1047 (Ind. Ct. App. 2011). Statutory construction is a question of law to be determined de novo by this Court. *Id.* We conclude that the Chapos have not established that the ISRPA barred the BZA's denial of their conditional use permit or rendered that decision void.

## 1. Safe Harbor Provisions of the ISRPA do not Protect the Chapos' Shooting Range

[22] The ISRPA provides that "[e]xcept as specifically prohibited by this chapter and subject to [Ind. Code § 35-47-11.1], a local unit of government may regulate the location, use, operation, safety, and construction of a shooting range." Ind. Code § 14-22-31.5-5. The ISRPA limits a government's restrictions on shooting ranges in existence before July 1, 1996. Indiana Code § 14-22-31.5-7 provides:

> Notwithstanding any ordinance adopted by a local unit of government, a shooting range that is in existence before July 1, 1996, may do the following within the geographic boundaries of the shooting range as it existed on June 30, 1996:
>
> (1) Repair, remodel, or reinforce a building or structure that is needed to ensure public safety or to secure the continued use of the building or structure.

(2) Reconstruct, repair, restore, or resume the use of a nonconforming building that has been damaged by fire, collapse, explosion, act of nature, or war after July 1, 1996. However, the reconstruction, repair, or restoration must be completed not more than one (1) year after the date of the damage to the building or the settlement of the property damage claim . . .

(3) Expand or increase the membership of the shooting range or opportunities for public participation at the shooting range.

[23] The trial court determined the ISRPA "is not a defense to this action and does not provide an opportunity to collaterally attack the [2012] decision of the [BZA]." Appellant's App. Vol. II, p. 30. It found the Chapos' commercial shooting range was developed between 2012 and 2016 and therefore fell outside the ISRPA's safe harbor provisions that apply to shooting ranges existing before July 1, 1996.

[24] We find unavailing the Chapos' contention on appeal that the ISRPA's safe harbor provisions protect their commercial shooting range as an expansion of their personal shooting range. First, the Chapos do not show that their personal shooting range was a "shooting range" within the meaning of the ISRPA. The ISRPA defines a "shooting range" as "an area designed and *operated for* the use of archery, rifles, shotguns, pistols, muskets, or similar firearms that are fired at silhouettes, skeet, trap, paper, stillboard, or other similar targets." Ind. Code § 14-22-31.5-3 (emphasis added).

[25] The Chapos simply assume that their personal shooting range meets this definition. As a result, they offer no basis for finding that they "operated" a shooting range within the meaning of the ISRPA before July 1, 1996, when the range was limited to their personal use and not open to the public. Because the Chapos raised the ISRPA as an affirmative defense both in their answer to the Commission's complaint for injunctive relief and during the summary judgment proceedings, they bore the burden of showing the applicability of the ISRPA. *See King v. Dejanovic*, 170 N.E.3d 268, 270 (Ind. Ct. App. 2021); *Fox v. Barker*, 170 N.E.3d 662, 665 (Ind. Ct. App. 2021). They have failed in that burden.

[26] But the Chapos' reliance on the ISRPA fares no better even if we assume their original personal shooting range qualified as a "shooting range" under the ISRPA. The ISRPA's safe harbor provisions apply only to activities "within the geographic boundaries of the shooting range as it existed on June 30, 1996." Ind. Code § 14-22-31.5-7. The record contains no evidence of the geographic boundaries of their personal shooting range as of June 30, 1996. The record simply reflects that the Chapos created a personal shooting range at several unspecified locations on their 100-plus acre property before 1996.

[27] Nor do the Chapos establish that their commercial shooting range first proposed in 2012 operated within the same geographic boundaries as their original personal shooting range on June 30, 1996. In fact, the Chapos made clear that the commercial shooting range expanded the personal range. Appellants' App. Vol. II, p. 58; Appellants' Br., p. 45 (noting that the Chapos hosted a grand opening of the commercial shooting range after "expanding the

sho[oting] range"). The Chapos' answer to the Commission's complaint for injunctive relief specifically alleged that the BZA "lacked authority to regulate the *expansion* of their shooting range." *Id.* at 59 (emphasis added). Deputy Big Shot's advertisements showed 23 firing positions for one event. Appellee's App. Vol. IV, p. 109.

[28]     The ISRPA's safe harbor provisions do not apply to any expansion of the shooting range's activities outside the June 30, 1996, geographic boundaries. Ind. Code § 14-22-31.5-7. Even within those boundaries, the only "expansion" authorized by the ISRPA is in "membership" to or "opportunities for public participation" at the shooting range. Ind. Code § 14-22-31.5-7(3). The ISRPA's safe harbor provisions also do not authorize or protect any construction of new "buildings" or "structures" on any post-1996 shooting range. Ind. Code § 14-22-31.5-7(1)-(2). As the record contains no evidence that the commercial shooting range was within the limits set by the ISRPA's safe harbor provisions, the trial court properly concluded those provisions did not apply.

## 2.  The ISRPA Noise Provisions do not Apply.

[29]     The Chapos next claim that the ISRPA's protections in noise-related actions barred the BZA's 2012 denial of their conditional use permit application and thus rendered that decision void. At issue is:

> A person who owns, operates, or uses a shooting range is not liable in any civil or criminal matter relating to noise or noise pollution that results from the operation or use of the shooting range if the construction and operation of the shooting range were legal at the time of its initial construction or initial

operation, and the shooting range continues to operate in a manner that would have been legal at the time of the inception or initial operation.[2]

[30] The Chapos argue that the BZA denied their conditional use permit application based on noise concerns. Even assuming the Chapos' contention is correct and that the ISRPA applies, they do not show that the BZA's denial was a civil matter relating to noise "that results from the operation or use of the shooting range."

[31] First, the Chapos' commercial shooting range was not in operation or use at the time of their conditional use permit application. All the concerns about noise expressed at the BZA hearing related to the future commercial shooting range, not the Chapos' existing personal range. The BZA made clear that its denial of the conditional use permit would not prohibit the Chapos from personally using their existing shooting range.

[32] But even if the BZA's 2012 decision qualified as the type of civil matter governed by Indiana Code § 14-22-31.5-6, the Chapos have not shown that the BZA's conditional use permit denial rendered them "liable" within the meaning of Indiana Code § 14-22-31.5-6. The BZA's denial merely deprived the Chapos of the opportunity to legally build and operate a commercial shooting range on

---

[2] The version of Indiana Code § 14-22-31.5-6 (1996) in effect before July 1, 2013, referred to "normal operation or use of the shooting range" but otherwise was identical.

their property. The denial did not impose any personal liability on the Chapos as it merely barred them from expanding their personal shooting range into a commercial shooting range. *Cf. Yates v. Kemp*, 979 N.E.2d 678, 681-82 (Ind. Ct. App. 2012) (analyzing Indiana Code § 14-22-31.5-6 in the context of a nuisance claim brought against shooting range operator). For these reasons, we find unpersuasive the Chapos' claim that the ISRPA's noise-related protections apply.

[33] Without any showing that the ISRPA applies, we need not address the Chapos' remaining arguments under that statute. The trial court properly rejected the Chapos' claim that the BZA's 2012 decision was void based on the ISRPA.

## B. BZA had Authority to Deny the Conditional Use Permit

[34] We also reject the Chapos' claim that the BZA lacked legal authority to deny the conditional use permit. We have already determined that the Zoning Ordinance limited shooting ranges on agricultural land by requiring a conditional use permit. Therefore, for the reasons already expressed, we reject the Chapos' initial claim that the lack of a specific zoning ordinance governing shooting ranges deprived the BZA of the legal authority to deny them that permit.

[35] We also find no merit in the Chapos' remaining claims that the BZA lacked legal authority based on the Second Amendment and on the failure of the BZA members to take statutorily required oaths.

## 1. The Chapos are Barred from Raising Their Second Amendment Claim

[36] The Second Amendment specifies that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Second Amendment applies to the states through the Fourteenth Amendment. *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 791 (2010).

[37] The Chapos explicitly state that they are not claiming the Zoning Ordinance violates the Second Amendment. Appellants' Br., p. 23. Instead, they claim "the act of the [BZA] in treating shooting ranges as a conditional use and thereby preventing the Chapos from exercising their Second Amendment right is unconstitutional." *Id.* But the Chapos are barred from raising this claim because they invited the error that they allege.

[38] The Chapos applied for a conditional use permit under the "Other Amusements" category of the Zoning Ordinance. The BZA acted on that application at the Chapos' request and denied them a conditional use permit. Years later—only after they were told to shut down the unpermitted shooting range—the Chapos reversed position and claimed for the first time that the BZA never had jurisdiction over the shooting range and that no conditional use permit was needed. "A party may not take advantage of an error [the party] commits, invites, or allows to happen as a natural consequence of [the party's] own neglect or misconduct." *Hickey v. Hickey*, 111 N.E.3d 242, 246 (Ind. Ct. App. 2018). A party who invites the very decision that the party later alleges is

void does not raise a claim that is subject to appellate review. *See Crowl v. Berryhill*, 678 N.E.2d 828, 830 (Ind. Ct. App. 1997) (ruling that a party who stipulated to an order could not later claim the judgment was void due to lack of statutory authority); *Stolberg v. Stolberg,* 538 N.E.2d 1, 5 (Ind. Ct. App. 1989) ("Invited error is not subject to review by this court."). Therefore, we need not address the Chapos' claim that the BZA's treatment of a shooting range as a conditional use violated the Second Amendment and thus rendered the BZA's 2012 decision void.

## 2.  The Chapos are Collaterally Estopped from Claiming the BZA Decision is Void due to Untaken Oaths

[39]    The Chapos also argue that the BZA lacks standing to sue because its board members did not timely take an oath of office. The Chapos acknowledge that they raised this issue in their Trial Rule 60(B) motion, which the trial court denied and the Chapos then unsuccessfully appealed. *Chapo,* 164 N.E.3d at 135. Yet the Chapos assert that this Court "ignored" parts of the oath-based claim in that prior appellate decision. Appellants' Br., p. 50. For that reason, the Chapos maintain this Court's earlier decision does not preclude them from renewing their attack on the BZA's standing on identical grounds. *Id.*

[40]    This Court in *Chapo* fully addressed the oath-based claim, including directly citing the statute that the Chapos now contend was ignored. *Id.* at 135. The Chapos are barred from relitigating this issue. *Holland,* 171 N.E.3d at 689 ("[C]ollateral estoppel[] bars the subsequent litigation of a fact or issue that was

necessarily adjudicated in a former lawsuit if the same fact or issue is presented in the subsequent lawsuit.").

[41] As we have rejected all of the Chapos' attacks on the BZA's legal authority to deny the condition use permit in 2012, we conclude that the Chapos have failed to establish that the BZA's decision was void and subject to collateral attack. This ruling resolves the Chapos' remaining summary judgment claims, all of which rest on an unavailable collateral attack on the BZA's decision.

## II. The Trial Court had Discretion to Enter the Challenged Remedy, Fine, and Attorney Fees

[42] In their final claim, the Chapos challenge the sanctions imposed by the trial court. They first challenge the trial court's decision to allow county officials to enter the Chapos' property to remedy and abate the violations if the Chapos did not comply with the judgment. They next challenge the fine imposed and the attorney fees awarded by the trial court.

## A. The Chapos Offer No Valid Challenge to the Remedy

[43] The Chapos allege that the trial court overstepped its authority by authorizing county officials to enter their property "to remedy and abate the violations of the Zoning Ordinance occurring on the property" if the Chapos failed to remedy the violations within 90 days. Appellants' App. Vol. II, p. 44. In support of this argument, the Chapos simply assert that there was no violation of the ordinance and therefore any sanctions were inappropriate. But we have already determined that the trial court properly entered the permanent

injunction based on the Chapos' non-compliance with the Zoning Ordinance. Accordingly, they have presented no error.

## B. The Chapos Have Waived Their Eighth Amendment Claim that the Fine was Excessive

[44] The Chapos challenge the trial court's imposition of a cumulative fine of $209,625 as excessive under the Eighth Amendment to the United States Constitution. The Chapos rely on *Timbs v. Indiana*, 586 U.S. __, 139 S. Ct. 682, 689, 203 L.Ed.2d 11 (2019), in which the United States Supreme Court ruled that the Eighth Amendment applied to the states through the Fourteenth Amendment to the United States Constitution. On remand, the Indiana Supreme Court affirmed the trial court's determination that the forfeiture of Timbs's $35,000 vehicle, which was involved in two drug buys totaling less than $400, was an excessive fine under the Eighth Amendment. *State v. Timbs*, 169 N.E.3d 361, 376-77 (Ind. 2021).

[45] The trial court's order shows that the maximum statutory fine was nearly $1.4 million for the 559 days that the Chapos flouted the administrative and court orders to cease operating the shooting range. *See* Ind. Code § 36-1-3-8(a)(10)(B) (limiting governmental fines for ordinance violations to $2,500 for the first occurrence and $7,500 for a second or subsequent occurrence). The court's fine of $209,625 amounted to 15% of the maximum statutory fine.

[46] The Chapos assume, without any supporting citations to the record, that the trial court did not consider the *Timbs* decisions when imposing that fine. But a

"trial court is presumed to know the law and apply it correctly." *Holtzleiter v. Holtzleiter*, 944 N.E.2d 502, 506 (Ind. Ct. App. 2011). In any case, the Chapos do not even explain how the trial court's order violates the *Timbs* decisions. The Chapos also do not reveal why the $209,625 fine is excessive under the Eighth Amendment or, specifically, the *Timbs* decisions.

[47] We will not transform into a party's advocate and fashion arguments on their behalf. *Miller v. Patel*, 212 N.E.3d 639, 657 (Ind. 2023). Nor will we address arguments that are too poorly developed to be understood. *Id.* The Chapos have therefore waived this claim. *See id.*; Ind. Appellate Rule 46(A)(8)(a) ("The argument [in the Appellants' Brief] must contain the contentions of the appellant on the issues presented, supported by cogent reasoning" and by "citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on").

## C. The Trial Court had Discretion to Award the $27,490.78 in Attorney Fees

[48] Finally, the Chapos contend the trial court erroneously ordered them to pay the Commission's attorney fees of $27,490.78. We review the trial court's award of attorney fees for an abuse of discretion. *Minser v. DeKalb Cty. Plan Comm'n*, 170 N.E.3d 1093, 1102 (Ind. Ct. App. 2021). "An abuse of discretion occurs when the court's decision either clearly contravenes the logic and effect of the facts and circumstances or misinterprets the law." *River Ridge Dev. Auth. V. Outfront Media, LLC,* 146 N.E.3d 906, 912 (Ind. 2020).

[49] The Commission sought attorney fees generally in its complaint. At the sanctions hearing, the Commission argued that attorney fees were appropriate because the Chapos pursued frivolous claims throughout the litigation and thereby increased the length and expense of the litigation. Although the trial court otherwise entered detailed findings, its ruling on attorney fees was brief:

> [The Commission is] awarded costs which include $27,490.78 in attorney fees as verified by Plaintiff's affidavit of attorney fees submitted as Plaintiff's "Exhibit 1" plus court costs.

Appellants' App. Vol. II, p. 45.

[50] Indiana courts generally follow the "American Rule," which calls for each party to a lawsuit to bear its own legal fees. *River Ridge Dev. Auth.,* 146 N.E.3d at 912. But exceptions to this rule exist. A trial court may award attorney fees authorized by statute. *Id.* For instance, Indiana Code § 34-52-1-1 authorizes an attorney fees award to the prevailing party in any civil action if the court finds that the other party: "(1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless; (2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or (3) litigated the action in bad faith."

[51] The Chapos note the trial court did not enter the findings required by Indiana Code § 34-51-1-1. But the trial court need not have done so because it appears to have awarded attorney fees on a different basis.

[52] The Zoning Ordinance specifies that Jefferson County may take legal action "to prevent or remedy any violations" of the Ordinance's terms. Appellee's App. Vol. II, p. 100. The Zoning Ordinance further provides that "[a]ll costs connected therewith shall accrue to the person or persons responsible" for the violation. *Id.* In addition, Indiana Code § 36-7-4-1014(f) provides that when the Commission succeeds in an enforcement action in court, "the respondent shall bear the costs of the action."

[53] The trial court appears to have relied on the "costs" provisions of the Zoning Ordinance and Indiana Code § 36-7-4-1014(f) when it "awarded [to the Commission] costs which include $27,490.78 in attorney fees." Appellants' App. Vol. II, p. 45. The trial court did not abuse its discretion.

[54] We affirm the trial court's judgment.

Riley, J., and Bradford, J., concur.